116 P.3d 381 (2005)
Ralph Dwight BUNCH, Respondent and Cross-Petitioner,
Jeffrey Morphis and Dwight Preston, Plaintiffs,
v.
KING COUNTY DEPARTMENT OF YOUTH SERVICES, Petitioner and Cross-Respondent.
No. 75103-0.
Supreme Court of Washington, En Banc.
Argued March 17, 2005.
Decided July 21, 2005.
*382 Howard Mark Goodfriend, Catherine Wright Smith, Edwards Sieh Smith & Goodfriend PS, Regina Cahan, Susan Nathalie Slonecker, Seattle, for Petitioner.
Charles Kenneth Wiggins, Kenneth Wendell Masters, Bainbridge Island, Jerry Robert McNaul, McNaul Ebel Nawrot et al., *383 Mary Ruth Mann, Law Offices of Mary R. Mann & Associates, Seattle, for Respondent.
Stewart Andrew Estes, Keating Bucklin & McCormack, Michael Barr King, Linda Blohm Clapham, John Benjamin Kerr Schochet, Lane Powell PC, Seattle, for Amicus Curiae Washington Defense Trial Lawyers.
Patricia Sue Rose, Richard D. Reed, Seattle, for Amicus Curiae Washington Employment Lawyers Ass'n.
Debra Leigh Williams Stephen, Bryan Patrick Harnetiaux, Spokane, Amicus Curiae Washington State Trial Lawyers Ass'n.
SANDERS, J.
¶ 1 Ralph Bunch sued King County Department of Youth Services for racial employment discrimination, obtaining over $600,000 in a jury award. The Court of Appeals affirmed but reduced the noneconomic portion of the damages from $260,000 to $25,000, an award which Bunch could accept or opt for a new trial on the damages issue alone. The county petitioned this court for review of the limitation of a new trial to damages only, which we denied. However, Bunch cross-petitioned, challenging the Court of Appeals' remittitur. We granted review and now hold the Court of Appeals improperly granted the remittitur.

FACTS AND PROCEDURAL HISTORY
¶ 2 Ralph Bunch is an African-American, who served in the Navy before working as a prison guard at the Monroe reformatory from 1979-91. In 1991 he switched to the Department of Youth Services in juvenile detention. His supervisor, colleagues, and the director of the department all praised Bunch's performance with the inmates.
¶ 3 Despite good reviews, one fellow detention officer testified that management viewed Bunch as a problem: "Mr. Bunch was thought of as a problem because he spoke out against things that he felt were wrong." Report of Proceedings (RP) at 1396. In 1995 and again in 1998 Bunch testified against the county in employment discrimination trials and later noticed increased disciplinary action by the management.
¶ 4 Bunch was disciplined for a variety of minor offenses. In May 1995 he was suspended for five days for allegedly swearing at a youth during a heated exchange between several inmates. Another staff member heard the exchange and denied hearing Bunch swear. Bunch was also suspended for not reporting the sexual abuse of an inmate. Bunch believed the incident had already been reported. He was suspended for 10 days for driving away from the facility during his lunch break, an action that Bunch routinely observed others doing without punishment. Youth Services Director Bob Williams noted this punishment was the severest he had observed, and he was unaware of any white person being punished for leaving the facility. He reduced the total days of Bunch's suspensions based on the progress he saw in Bunch.
¶ 5 Bunch was later reprimanded for using a wrist lock on an inmate, a move he had used before and had never been told was forbidden. He was suspended for five days for giving a letter of recommendation directly to an inmate. Another staff member testified to writing and delivering similar letters without any reprimand. Bunch was reprimanded for violating the "level system,"[1] and for horseplay with an inmate, which was common. Bunch believes he was the only person to be disciplined for violating the level system, and other testimony confirms this suspicion. A number of other employees also testified of racial discrimination at the department, including disparate discipline for violations.
¶ 6 Bunch sued the department for employment discrimination in 1999 under Washington's Law Against Discrimination, chapter 49.60 RCW.[2] In April 2001 management decided *384 to terminate Bunch's employment based on the testimony of several inmates that Bunch showed them an R-rated video on January 1, 2001. The inmates took polygraph tests with varying results. Bunch denied showing that or any other video.
¶ 7 Bunch now works elsewhere as a security guard, making less than he did at the county. He described the effect on his family as a "phenomenal . . . crushing blow financially." Report of Proceedings (RP) at 1182. He had to explain the termination to his wife and three children. Bunch also testified his time at the county was "pretty horrendous. Uh, pretty, uh  that type of harassment, it's, uhit's bad. Overwhelming." RP at 1180. "It definitely had an effect on my personal life at home. It, uhm, . . . depression, you know, on my part. And, uhbut I'm a survivor." Id. He was concerned about getting another good job because of his record. RP at 1184. When asked if he was angry about the incident, he said: "Sure, I get angry, but, you know, you have to be in control of yourself. I try to be in control all the time of myself. Of course I'm angry." Id.
¶ 8 A jury found the county discriminated and retaliated against Bunch, and awarded him $3,500 in lost past wages and fringe benefits, $340,000 in lost future wages, and $260,000 in noneconomic damages. The county moved for a reduction in the noneconomic damages or a new trial. The trial court denied the motion. The court also awarded Bunch attorney fees of $166,754.50 and costs of $10,126. The county appealed.
¶ 9 The Court of Appeals affirmed in part and reversed in part. Bunch v. King County Dep't of Youth Servs., noted at 119 Wash. App. 1034, 2003 WL 22839943 (2003). The court reversed the trial court's denial of remittitur and reduced the noneconomic damages from $260,000 to $25,000. The court determined the evidence was insufficient to support the award, it was motivated by passion and prejudice, and it shocked the court's conscience. On Bunch's motion, the court amended its opinion to allow Bunch the option of choosing a new trial on damages alone.
¶ 10 The county petitioned this court for review of the Court of Appeals' limitation of a new trial to damages alone, but we denied that petition. Bunch cross-petitioned to challenge the Court of Appeal's remittitur. We granted that petition by order dated January 4, 2005. We deferred Bunch's request for attorney fees under RAP 18.1(j) pending the outcome of the case.[3]

*385 ISSUES
I. What is the appropriate level of deference an appellate court should afford to the trial court when deciding remittitur issues?
II. Whether the Court of Appeals properly reduced the jury's award of noneconomic damages from $260,000 to $25,000 because it thought the award unsupported by evidence, the result of passion and prejudice, and shocking to its conscience?

ANALYSIS
¶ 11 Appellate courts unquestionably have the authority to reduce jury damages awards. Appellate remittitur was part of the common law in 1889 when the Washington Constitution was ratified. In 1889 the United States Supreme Court affirmed an appellate court's authority to grant remittiturs: "[The appellate court is] at liberty, in disposing of the motion for a new trial according to its view of the evidence, either to deny or to grant a new trial generally, or to order judgment for a less sum than the amount of the verdict, conditional upon a remittitur by the plaintiff." Kennon v. Gilmer, 131 U.S. 22, 30, 9 S.Ct. 696, 33 L.Ed. 110 (1889); see also Ark. Valley Land & Cattle Co. v. Mann, 130 U.S. 69, 73-74, 9 S.Ct. 458, 32 L.Ed. 854 (1889). Since we interpret the right to a jury trial in our constitution "as it existed at the time of the Constitution's adoption in 1889," Nielson v. Spanaway General Medical Clinic, Inc., 135 Wash.2d 255, 266, 956 P.2d 312 (1998) (interpreting Const. art. I, § 21), it follows that an appellate court's common law authority to remit jury awards is consistent with the constitutional right to a jury trial. We have recently upheld this power. See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 330, 858 P.2d 1054 (1993). Since appellate courts unquestionably have the authority to remit a jury award, the question then becomes what level of deference they should grant to the trial court, who first decides whether to grant or deny a motion for remittitur.[4]

I. Appellate Courts Review Trial Court Decisions to Deny Remittiturs for Abuse of Discretion
¶ 12 Bunch argues our remittitur jurisprudence has evolved through three stages. In the early pre-1933 stage, courts gave little deference to juries' awards. No statute granted courts the authority to grant a remittitur, but they exercised it as part of their inherent power. See Anderson v. Dalton, 40 Wash.2d 894, 898-99, 246 P.2d 853 (1952).[5] Bunch cites Kohler v. Fairhaven & New Whatcom Railway Co., 8 Wash. 452, 36 P. 253 (1894), to support his contention that early appellate courts reviewed trial courts' decisions on remittiturs for abuse of discretion. Kohler states the decision to grant a new trial because a jury's damages award is excessive is within the discretion of the trial judge. 8 Wash. at 453, 36 P. 253. Appellate courts then apply an abuse of discretion standard. Id. Chief Justice Dunbar dissented:
I dissent. The plaintiff has a constitutional right to have the questions of fact involved in his case submitted to the discretion of a jury. The amount of damages which he sustained is as purely a question of fact as any question in the case. I do not deny the right of the court to set aside a verdict when it plainly appears that the verdict was the result of passion or prejudice; but I do most earnestly protest against the court substituting its judgment for the judgment of the jury; and basing *386 its conclusion that the jury was controlled by passion or prejudice on the simple fact that the verdict rendered by the jury was a larger verdict than the court would have rendered if the question had been originally submitted to its discretion. Such an assumption by the courts virtually annuls the right of trial by jury. Practically the question of damages may as well be submitted to the court in the first instance.
Id. at 455, 36 P. 253 (Dunbar, C.J., dissenting).
¶ 13 Bunch then argues we turned away from the abuse of discretion standard and freely remitted juries' awards of damages. Cases from the early twentieth century show this court remitting damages awards without mentioning the trial court's discretion. See, e.g., O'Brien v. Griffiths & Sprague Stevedoring Co., 116 Wash. 302, 306, 199 P. 291 (1921); Guignon v. Campbell, 80 Wash. 543, 546, 141 P. 1031 (1914); Thoresen v. St. Paul & Tacoma Lumber Co., 73 Wash. 99, 108, 131 P. 645 (1913); Nelson v. Bromley, 55 Wash. 256, 258, 104 P. 251 (1909).
¶ 14 Bunch says the second stage began in 1933 when the legislature enacted a statute allowing for remittiturs. Laws of 1933, ch. 138, § 2 (codified at RCW 4.76.030). This statute grants trial courts the authority to grant a new trial or a remittitur if the judge finds the award so excessive "as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice." Id. On appeal, the appellate court reviews the trial court's action de novo and applies a strong presumption in favor of the jury's award. Id. The appellate court may uphold the remittitur if it finds "the damages awarded in such verdict by the jury were so excessive... as unmistakably to indicate that the amount of the verdict must have been the result of passion or prejudice." Id. The same standard applies to both trial and appellate courts, and the appellate court does not defer to the trial court.
¶ 15 Bunch claims the statute curbed the number of remittiturs granted by appellate courts. While this may be true, Bunch's tidy categories are perhaps a little more fluid. In Zorich v. Billingsley, 55 Wash.2d 865, 869, 350 P.2d 1010 (1960), we remitted the jury's award of damages without mentioning the trial court's discretion. Likewise, in Malstrom v. Kalland, 62 Wash.2d 732, 738-39, 384 P.2d 613 (1963), we remitted a trial judge's award of damages because the facts did not support it.
¶ 16 The third phase, Bunch argues, is based on an understanding of the jury's constitutional role in finding questions of fact. In 1967 we emphasized the jury's role in determining damages: "Regardless of the court's assessment of the damages, it may not, after a fair trial, substitute its conclusions for that of the jury on the amount of damages. When the evidence concerning injuries is conflicting, the jury decides whether the injuries are insignificant, minor, moderate, or serious, and it determines the amount of damages." Cox v. Charles Wright Academy, Inc., 70 Wash.2d 173, 176, 422 P.2d 515 (1967) (citation omitted). Later cases have affirmed this principle. See, e.g., James v. Robeck, 79 Wash.2d 864, 869, 490 P.2d 878 (1971) ("To the jury is consigned under the constitution the ultimate power to weigh the evidence and determine the facts  and the amount of damages in a particular case is an ultimate fact.").
¶ 17 Based on this view of our jurisprudence, Bunch argues for a bifurcated standard of review. If the damages award is remitted under RCW 4.76.030, the appellate court reviews the remittitur de novo as the statute explicitly provides. But if the trial court exercises its inherent power to remit the damages, then an appellate court reviews for abuse of discretion. Recent case law supports this type of analysis:
The appellate court does not engage in exactly the same review as the trial court because deference and weight are also given to the trial court's discretion in denying a new trial on a claim of excessive damages. The verdict is strengthened by denial of a new trial by the trial court. While either the trial court or an appellate court has the power to reduce an award or order a new trial based on excessive damages, "appellate review is most narrow and restrained" and the appellate court "rarely exercises this power."
*387 Fisons Corp., 122 Wash.2d at 330, 858 P.2d 1054 (footnotes omitted) (quoting Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 269, 840 P.2d 860 (1992)); see also Bingaman v. Grays Harbor Cmty. Hosp., 103 Wash.2d 831, 835-36, 699 P.2d 1230 (1985).
¶ 18 Bingaman clearly stated the rule for appellate remittiturs: "An appellate court will not disturb an award of damages made by a jury unless it is outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice." 103 Wash.2d at 835, 699 P.2d 1230. This rule has not changed. See, e.g., Stevens v. Gordon, 118 Wash.App. 43, 54, 74 P.3d 653 (2003). This specific language does not mention any deference to the trial court and may suggest de novo review. However, in Bingaman, Washburn, and Fisons Corp., we placed the rule within the broader discussion of the trial court's discretion and noted appellate courts should rarely exercise the power since the constitution gives to the jury the duty to find the facts. Thus, abuse of discretion is the appropriate standard of review.
¶ 19 The above discussion demonstrates the need for further refinement. The statute mandates de novo review; our case law requires abuse of discretion review. Bunch reconciles these approaches historically and with a distinction between remittiturs granted under the statute and those granted under the court's inherent power. The historical approach of three distinct stages is not entirely convincing since this court has not hesitated to remit damages when it thought the award excessive. See Billingsley, 55 Wash.2d 865, 350 P.2d 1010. Further, the 1933 statute recognized a strong presumption in favor of the jury's verdict, presumably based on the jury's constitutional role. Likewise, the distinction between statutory and court-based remittiturs is not satisfactory because the standards overlap and courts do not always indicate which standard they are applying. Further, there does not seem to be a solid reason for Bunch's suggested distinction. Under that rule trial courts would probably choose to exercise their inherent power with its greater deference to avoid reversals, rendering the statute superfluous. This makes little sense.
¶ 20 A more satisfying approach is to draw the line between situations in which the trial court remits the award and situations in which the trial court does not. The statutory standard of review (de novo) applies only when the trial court actually remits an award. RCW 4.76.030; see also Ma v. Russell, 71 Wash.2d 657, 430 P.2d 518 (1967) (applying the statute's de novo standard). When the trial court remits an award it invades the constitutional province of the jury, making the less deferential standard of review appropriate. When the trial court refuses to remit the award, then our case law says the verdict is strengthened and the discretion of the trial court should be respected. An appellate court should review the verdict using the usual rule set forth in Bingaman, while respecting the trial court's discretion in denying a remittitur.
¶ 21 Thus, we hold that a trial court order remitting a jury's award of damages is reviewed de novo since it substitutes the court's finding on a question of fact. Trial court orders denying a remittitur are reviewed for abuse of discretion using the substantial evidence, shocks the conscience, and passion and prejudice standard articulated in precedent. This rule harmonizes the statute, our case law, and the jury's constitutional role.[6]
*388 ¶ 22 An older Court of Appeals opinion notes the confusion swirling around the standard of review analysis, but it persuasively concludes with the same rule outlined above. See Hendrickson v. Konopaski, 14 Wash. App. 390, 541 P.2d 1001 (1975). The case merits a lengthy quote:
We find it impossible to reconcile all the decisions and statements of the Supreme Court pertaining to an abuse of discretion standard of review on the one hand and de novo review on the other. It appears to us, however, that where a trial court has proceeded under RCW 4.76.030, and has either reduced or increased a verdict, de novo review of the evidence becomes the standard of appellate review and the trial court has no discretion where the verdict is "within the range" of the credible evidence. But, where the trial court has simply granted a new trial under the authority of CR 59(a)(5) on grounds of an excessive or inadequate verdict, an abuse of discretion standard of appellate review is used in recognition of some discretion in the trial court.
This distinction is perhaps proper because both a remittitur and additur involve a greater invasion of the jury realm than does the simple grant of a new trial. We also suggest that RCW 4.76.030 creates a presumption favoring a jury verdict and mentions de novo review by the appellate court under certain circumstances. In contradistinction, CR 59 speaks more in language of discretion than does the statute. Whatever the real merit of this distinction, it is clear the function of the appellate court has been similar whether the statute or the court rule has been used as the basis of the trial court's decision. In both types of cases the appellate courts have reviewed the evidence to determine whether sufficient credible evidence existed, whether or not conflicting or disputed, which would factually support a verdict of the size rendered.
Id. at 394-95, 541 P.2d 1001 (citations omitted). The court is right to note that much of the haggling over the proper standard of review when the trial court grants a new trial or a remittitur is semantics. See supra note 5. The substance of the review for substantial evidence remains the same. This case does not require us to sort out the conflicting authority, however, since the trial court denied the remittitur and the standard for that situation is much clearer. An abuse of discretion standard is appropriate where, as here, the trial court refused remittitur.[7]

*389 II. Under an Abuse of Discretion Standard, the Court of Appeals Improperly Remitted Bunch's Damages
¶ 23 "An appellate court will not disturb an award of damages made by a jury unless it is outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice." Bingaman, 103 Wash.2d at 835, 699 P.2d 1230. "The requirement of substantial evidence necessitates that the evidence be such that it would convince `an unprejudiced, thinking mind.'" Indus. Indem. Co. of N.W., Inc. v. Kallevig, 114 Wash.2d 907, 916, 792 P.2d 520 (1990) (quoting Hojem v. Kelly, 93 Wash.2d 143, 145, 606 P.2d 275 (1980)). The "shocks the conscience" test asks if the award is "flagrantly outrageous and extravagant." Bingaman, 103 Wash.2d at 836-37, 699 P.2d 1230. Passion and prejudice must be "unmistakable" before they affect the jury's award. RCW 4.76.030; Bingaman, 103 Wash.2d at 836, 699 P.2d 1230. We once stated the rule this way:
"The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess."
Kramer v. Portland-Seattle Auto Freight, Inc., 43 Wash.2d 386, 395, 261 P.2d 692 (1953) (quoting Coleman v. Southwick, 9 Johns. 45, 6 Am. Dec. 253 (N.Y.Sup.1812) (Kent, Ch. J.)).
¶ 24 The jury is given the constitutional role to determine questions of fact, and the amount of damages is a question of fact. Robeck, 79 Wash.2d at 869, 490 P.2d 878. We strongly presume the jury's verdict is correct. Sofie v. Fibreboard Corp., 112 Wash.2d 636, 654, 771 P.2d 711, 780 P.2d 260 (1989). "The jury's role in determining noneconomic damages is perhaps even more essential." Id. at 646, 771 P.2d 711. A trial court's denial of a remittitur strengthens the verdict, Fisons Corp., 122 Wash.2d at 330, 858 P.2d 1054, and, as determined above, we review for abuse of discretion.
¶ 25 Bunch argues the "range of substantial evidence" standard is meaningless in the context of noneconomic damages. While noneconomic damages especially are within a properly instructed jury's discretion, Bingaman, 103 Wash.2d at 835, 699 P.2d 1230,[8] there must be evidence upon which the award is based: "The plaintiff, once having proved discrimination, is only required to offer proof of actual anguish or emotional distress in order to have those damages included in recoverable costs pursuant to RCW 49.60." Dean v. Municipality of Metro. Seattle-Metro, 104 Wash.2d 627, 641, 708 P.2d 393 (1985). The distress need not be severe. Nord v. Shoreline Sav. Ass'n, 116 Wash.2d 477, 485, 805 P.2d 800 (1991). The Court of Appeals has applied this standard in the context of employment discrimination. See Herring v. Dep't of Soc. & Health Servs., 81 Wash.App. 1, 25, 914 P.2d 67 (1996).
¶ 26 The evidence of emotional distress is limited, but it is sufficient to support an award of noneconomic damages. Bunch testified that he was overwhelmed by the discrimination, and that he was depressed and angry. The county discriminated against him over a six year period, which is substantial. *390 The record contains the numerous instances in which he was disciplined for petty offenses that others committed with impunity. He now works for significantly less pay with minimal benefits. He had to explain to his family why he was fired. All of these facts provide a basis from which the jury could infer emotional distress.
¶ 27 The county argues that Bunch never consulted a healthcare professional, and no one close to him testified about his anxiety. That is true, but such evidence is not strictly required; our cases require evidence of anguish and distress, and this can be provided by the plaintiff's own testimony. See Nord, 116 Wash.2d at 487, 805 P.2d 800 (each plaintiff testified about his anger and shock at the defendant's actions, and this testimony in conjunction with the other facts of the case supported an award for emotional distress). Corroborative evidence is certainly helpful, but it is for the jury to weigh the credibility of the witness and determine if he in fact suffered mental anguish. Bunch presented sufficient evidence to convince an "unprejudiced, thinking mind" of his anguish, and that is enough to support an award for emotional distress.
¶ 28 The Court of Appeals found the award of $260,000 in noneconomic damages shocked its conscience. The court cited Hill v. GTE Directories Sales Corp., 71 Wash.App. 132, 856 P.2d 746 (1993). In Hill, the plaintiff sued for sex discrimination, testifying that she consulted a doctor, who prescribed Xanax to calm her, and a psychologist. The jury awarded her $198 in stipulated medical expenses, $40,000 in lost income, and $410,000 in noneconomic damages for emotional distress. 71 Wash.App. at 134, 856 P.2d 746. The trial judge reduced the economic damages to $19,000 and the noneconomic damages to $125,000. The Court of Appeals affirmed, noting the jury's economic award was not supported by the evidence, and the award for emotional distress was the result of passion and prejudice.
¶ 29 As a Court of Appeals decision, Hill is not binding. Moreover, Hill is distinguishable from this case in several ways. First, the noneconomic damages in Hill were 10 times the amount of the economic damages, which certainly indicates prejudice. Here the noneconomic damages are roughly three quarters of the economic damages ($260,000 compared to $340,000). Second, the jury's excessive award of economic damages in Hill cast suspicion on the award of noneconomic damages. Here the award of economic damages is uncontested. Third, the discrimination in Hill occurred over about 13 months, whereas the county discriminated against Bunch for six years. Finally, in Hill the trial court remitted the damages, and the Court of Appeals noted the lower court's "better position to make that determination" and accorded it "room for the exercise of its sound discretion." Id. at 140, 856 P.2d 746. Here the trial judge denied the remittitur, strengthening the verdict, and the Court of Appeals did not mention the trial court's discretion at all. In short, comparisons of the present case to Hill are misguided.
¶ 30 Additionally, the jury's award of noneconomic damages is not so excessive as to be "flagrantly outrageous and extravagant," particularly in light of the strong presumption we accord to jury verdicts. The trial court's refusal to remit the damages likewise confirms the award. We cannot say it was an abuse of discretion to deny the remittitur. Our conscience is apparently more resilient than the Court of Appeals to shocks.
¶ 31 Finally, the Court of Appeals concluded "the award indicates passion or prejudice, and a reaction to the litany of negative testimony about discriminatory practices by the County." Bunch v. King County Dep't of Youth Servs., No. 49655-7-I, slip op. at 10, 119 Wash.App. 1034, 2003 WL 22839943 at *4 (Wash.Ct.App. Dec. 1, 2003). The County argues all of the testimony from other witnesses, while necessary to prove discriminatory intent, tainted the jury's verdict. It notes that Washington's Law Against Discrimination allows recovery only for "actual damages," RCW 49.60.030(2), and that punitive damages are forbidden, see Dailey v. N. Coast Life Ins. Co., 129 Wash.2d 572, 575, 919 P.2d 589 (1996). It cites federal cases interpreting federal law, which require emotional distress damages to be based on harm *391 to the plaintiff alone, not to so-called "me-too" witnesses: "[C]ase law reveals that courts scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony." Price v. City of Charlotte, 93 F.3d 1241, 1251 (4th Cir. 1996).[9] This statement is true, but it does not automatically lead to the conclusion that passion and prejudice influenced the jury's award.
¶ 32 "Before passion or prejudice can justify reduction of a jury verdict, it must be of such manifest clarity as to make it unmistakable." Bingaman, 103 Wash.2d at 836, 699 P.2d 1230. "The verdict of a jury does not carry its own death warrant solely by reason of its size." Id. at 838, 699 P.2d 1230. "As to the other factors from which the idea of passion and prejudice may be derived, sometimes there may occur during the trial untoward incidents of such extreme and inflammatory nature that the court's admonitions and instructions could not cure or neutralize them." Robeck, 79 Wash.2d at 871, 490 P.2d 878. As explained above, the size of this verdict is within the bounds of the evidence presented, and there is no indication of anything untoward in the proceedings that justifies setting the verdict aside based on passion and prejudice.
¶ 33 In sum, the Court of Appeals was not justified to reduce the noneconomic damages from $260,000 to $25,000less than a tenth of the original amount. The court failed even to mention the trial court's discretion, and misanalogized to Hill. The jury's award of noneconomic damages is within the range of the evidence presented, is not "flagrantly outrageous and extravagant," nor was it motivated by passion and prejudice. The award of the jury should stand unmodified.

CONCLUSION
¶ 34 We reverse the Court of Appeals insofar as it remitted the jury's award, and we reinstate the jury's award of noneconomic damages. We also award Bunch reasonable attorney fees and costs.[10]
¶ 35 It is so ordered.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST and J.M. JOHNSON, JJ.
NOTES
[1] The "level system" is a points system that awards good behavior and punishes bad behavior. A higher points rating earned the youths perks like candy or the ability to stay out longer. The points also determined the level of discipline for bad behavior. The system was administered with a degree of discretion afforded to the detention officers.
[2] The statute reads in relevant part:

Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).
RCW 49.60.030(2).
[3] The parties filed supplemental briefs on February 4, 2005. Bunch moved on February 9, 2005 to strike portions of King County's supplemental brief. The motion was passed to the merits. Bunch argues the county is improperly trying to raise an issue from its petition for review that has been denied, namely, whether a new trial should be limited to damages alone. The county argues it addressed the issue as defined by this court's webpage. The webpage states the issue as follows:

Whether the Court of Appeals properly reversed the judgment in this employment discrimination action, either for remittitur of the plaintiff's noneconomic damages from $260,000 to $25,000 or for retrial on the issue of general damages only, at the plaintiff's election, based on the conclusion that the jury award was unsupported by the evidence.
http://www.courts.wa.gov/appellate trial courts/supreme/issues/?fa=atc supremeissues. display & fileID=2005jan#P360 20121 (last visited July 20, 2005). The commissioner's office prepares these issue statements, but the website contains this disclaimer: "Please note that the Justices have not reviewed or approved the issues or classifications, and there can be no guarantee that the court's opinions will address these precise questions" (http://www.courts.wa.gov/appellate trial courts/supreme/issues/ (last visited July 20, 2005)). In light of the briefing filed with this court, the website's issue statement is accurate only if the new trial language is read descriptively as what the Court of Appeals ordered. It does not represent the issues we accepted for review. When this court narrows issues to be reviewed it does so in the order granting review. Here our order did not frame the issues with particularity.
The county's petition for review raised the issue of a new trial's limitation to the question of general damages. We denied the petition. Bunch's cross-petition did not address that issue except insofar as it responded to the county's petition; the issue was not one raised by the cross-petition. It is improper for the county to argue an issue that is not before the court. The scope of our review is limited to issues raised in the cross-petition. RAP 13.7(b). While we have the authority to address the issue, we already chose not to do so. We therefore grant Bunch's motion to strike.
[4] The county argues that Bunch invited error by asking the Court of Appeals to modify its opinion to include the remittitur language. Initially, the court simply reduced the damages. The motion for reconsideration asked the court to allow a new trial in the alternative. This was a clarifying move on Bunch's part and was not inviting any kind of error that bars further review.
[5] Before 1933 a statute authorized courts to grant a new trial if the award was excessive by reason of passion or prejudice, but it did not authorize a remittitur. See Anderson, 40 Wash.2d at 898-99, 246 P.2d 853 (citing Laws of 1854, ch. XX, § 216).
[6] Amicus Washington State Trial Lawyers Association (WSTLA) Foundation has a slightly different approach. WSTLA Foundation suggests substantial evidence review tests for legal sufficiency of the evidence, whereas the "shocks the conscience and passion and prejudice" review looks at the weight of the evidence. As the former is a legal inquiry, it should be reviewed de novo; the latter rests largely in the discretion of the trial judge and hence is reviewed for abuse of discretion. WSTLA Foundation compares RCW 4.76.030 with CR 59(a) and CR 50(a), the rules governing motions for a new trial and for judgment as a matter of law, respectively. Under CR 59(a)(7) the trial court determines if "there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or [if] it is contrary to law." CR 50(a) employs a similar standard. CR 50(a) ("If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law. . . ."). It is important to note the civil rules do not say what standard of review an appellate court should employ, whereas the remittitur statute does.

Professor Trautman, writing in 1967, showed the two civil rules employ the same standard. Philip A. Trautman, Motions Testing the Sufficiency of Evidence, 42 Wash. L.Rev. 787, 809-15 (1967); see also Haft v. N. Pac. Ry. Co., 64 Wash.2d 957, 960, 395 P.2d 482 (1964) ("In considering the question of whether the trial court correctly granted defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial, we are mindful of the oft stated rule that in passing upon such motions the evidence, and all reasonable inferences therefrom, must be viewed in a light most favorable to the nonmoving party, and if there is substantial evidence supporting the verdict of the jury, the verdict must stand." (emphasis added)).
Trial court decisions granting or denying motions for unconditional new trials are reviewed for abuse of discretion. Palmer v. Jensen, 132 Wash.2d 193, 197, 937 P.2d 597 (1997). "Where sufficient evidence exists to support the verdict, it is an abuse of discretion to grant a new trial." Id. at 198, 937 P.2d 597. "Conversely, it is an abuse of discretion to deny a motion for a new trial where the verdict is contrary to the evidence." Id. Since trial courts are required to specify why they are ordering a new trial, including reasons outside the record, CR 59(f), appellate courts are in as good a position to determine sufficiency of the evidence. This sounds a lot like de novo review, yet it is called abuse of discretion. In any event, an unconditional grant for a new trial differs from a remittitur, especially since a statute mandating de novo review governs the latter. See Robeck, 79 Wash.2d at 870, 490 P.2d 878 (discussing "questions of excessive or inadequate verdict as distinguished from the question of granting or denying a new trial outright").
[7] Bunch also cites Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), which held that appellate courts review a trial court's denial of a remittitur for abuse of discretion. The opinion was based on the reexamination clause in the Seventh Amendment: "no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law." Because appellate review of a trial court's denial of a remittitur was a more recent development, the Court reasoned that abuse of discretion was necessary to protect the jury's constitutional role. Id. at 434, 116 S.Ct. 2211.

However, the federal analogy is inappropriate because the Washington Constitution does not have a reexamination clause, see Const. art. I, § 21 ("The right of trial by jury shall remain inviolate. . . ."), but this conclusion does not change the above analysis.
[8] The jury instruction on damages stated in relevant part:

Your award must be based upon evidence and not upon speculation, guess, or conjecture. The law has not furnished us with any fixed standards by which to measure emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and/or anguish. With reference to these matters, you must be governed by your own judgment, by the evidence in the case, and by these instructions.
Clerk's Papers at 1096.
[9] The county also cites federal law for the quantum of evidence required. See Xieng v. Peoples Nat'l Bank of Wash., 120 Wash.2d 512, 531, 844 P.2d 389 (1993) (this court considers federal law when interpreting RCW 49.60 in the absence of state precedent). However, it appears the circuits are split on that question. Compare Vadie v. Miss. State Univ., 218 F.3d 365, 377 (5th Cir.2000) (requiring demonstrable emotional distress that is sufficiently articulated with more than conclusory statements) with Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir.2003) (rejecting that rule).
[10] RCW 49.60.030(2) grants attorney fees and costs to the prevailing party in employment discrimination cases. See Wheeler v. Catholic Archdiocese of Seattle, 124 Wash.2d 634, 643, 880 P.2d 29 (1994); RAP 18.1. The trial court awarded attorney fees, the Court of Appeals awarded them for the appeal, and it is proper that we do so as well.