**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

MAKENNA O'MEARA,             )     No. 81139-8-I
                                       )
            Respondent,      )
                                       )     DIVISION ONE
                v.               )
                                       )
HAVE A HEART COMPASSION CARE, )
INC., a Washington Corporation, and    )
DAMON MARTINEZ,            )
                                       )     UNPUBLISHED OPINION
            Appellants.       )
———————————————————— )

MANN, C.J. — Have a Heart Compassion Care, Inc. and Damon Martinez (collectively "Have a Heart") appeal the trial court's findings of fact and conclusions of law following a bench trial arising from Makenna O'Meara's claims of quid pro quo sexual harassment and retaliation in violation of the Washington Law Against Discrimination (WLAD) ch. 49.60 RCW, wrongful discharge, and willful withholding of wages. Have a Heart raises multiple issues on appeal ranging from the trial court's credibility determinations to its conclusion that Have a Heart terminated O'Meara in violation of the WLAD. We affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

On June 28, 2016, O'Meara began working as a counter sales associate, or "budtender," for Have a Heart in the Greenwood neighborhood of Seattle. Martinez was the general manager of Have a Heart throughout O'Meara's employment.

On August 7, 2016, O'Meara and two of her fellow employees were victims of an attempted armed robbery where they were zip-tied and held at gunpoint. In the early hours of August 8, while police were still present, Have a Heart CEO Ryan Kunkel, COO Edward Mitchell, Martinez, and Steve Round came to the store's location to discuss the robbery with the victim-employees. The group told the employees that they could take paid time off.

O'Meara returned to Have a Heart on the afternoon of August 8, 2016, to be with her coworkers and process the events of the previous night. Martinez, Round, and other employees were present. Once at the store and realizing that she was in the same spot where she had been zip-tied 12 hours prior, O'Meara began to feel uneasy. Round, who was checking inventory, approached O'Meara and asked if she would like to go outside for a walk. O'Meara agreed and the two went to an alley behind the store.

Round and O'Meara began talking about the previous day's events. They discussed O'Meara's past trauma, and Round's experiences with gun violence and the military. While they were talking, Round was rubbing O'Meara's back and shoulders in a sexually-suggestive manner. Round said that O'Meara needed a strong man in her life and that he could be her "big rock." Round told O'Meara that he could get her a position in inventory, which would be safer and offer better pay.

O'Meara excused herself to address a text message from Sokha Kunkel, the wife of CEO Ryan Kunkel.  O'Meara called Sokha,[1] who expressed her sympathies regarding the robbery and reaffirmed an offer of paid leave and counseling.  O'Meara informed Martinez of her conversation with Sokha about paid leave and clocked out.

At Round's suggestion, he and O'Meara went to eat at a Mexican restaurant adjacent to Have a Heart where staff and management regularly gathered for meetings.  Round offered O'Meara more alcohol at the restaurant, pulled his chair next to her, and engaged in additional sexually-suggestive behavior, including massaging O'Meara and attempting to put her hand on his leg.

After Round and O'Meara left the restaurant, they went to a nearby seating area to smoke cannabis.  While there, Round pulled O'Meara against him, kissed her, pressed his erection against her pelvis, and attempted to seat her on his lap.  O'Meara eventually made her way to her vehicle and texted Round that she had to go home.  Round texted O'Meara five times following her departure; she responded to none of them.

The following day, August 9, 2016, O'Meara called Martinez in tears, telling him that Round kissed her and was sending her unwanted text messages.  Martinez told O'Meara that Round would be fired, memorializing the commitment in a text that stated: "he will just disappear.  I am so sorry."

Following the call, O'Meara recounted Round's actions with her coworker, Alaina Wells.  O'Meara and Wells went to Have a Heart to buy cannabis with their employee

---

[1] This opinion refers to Sokha and Ryan Kunkel by their first names for clarity; we intend no disrespect.

discounts, where Martinez told O'Meara to leave because Round was there and about to be fired.

Later that evening, Round texted O'Meara eight times. O'Meara blocked Round's number and forwarded the messages to Martinez, telling him that she was fearful and considering calling the police. One of Round's messages stated that he knew of O'Meara informing Martinez of his advances and that he would be resigning.

Because of the messages, O'Meara began experiencing symptoms of severe anxiety and posttraumatic stress disorder (PTSD).[2] As a result, O'Meara took 20 to 30 of her anti-anxiety medication pills in her first and only suicide attempt. On August 11, 2016, O'Meara visited her primary care provider, Dr. John Olson, who saw her for an acute crisis. Olson arranged for her to meet with a behavioral health counselor for a crisis intervention plan.

On August 10, 2016, O'Meara called Martinez to get an update on Round. Martinez informed O'Meara that Have a Heart did not fire Round. O'Meara told Martinez she felt unsafe and that she planned to hire a lawyer and report the incident to the police. Ryan Kunkel called O'Meara that same day to ask her "what did she believe had happened?" O'Meara was upset by Ryan's dismissive nature and abruptly informed him that she was going to hire a lawyer and contact the police.

Have a Heart created a "Special Incident Report" on August 10, 2016, based on Martinez and O'Meara's conversations, as well as a written statement from Round. The author of the report is unidentified and did not have direct contact or investigate the claim.

---

[2] O'Meara has been diagnosed with PTSD since she was 13 years old. Dr. Olson testified that prior to O'Meara's August 11, 2016 visit, her PTSD symptoms were relatively stable.

On August 12, 2016, O'Meara again inquired of Martinez about the investigation of Round. That same day, O'Meara gave a statement regarding Round to Detective Magan, the same detective that had investigated the August 7 robbery. O'Meara ultimately filed for, and was granted, a sexual assault protection order and temporary restraining order against Round.

On August 17, 2016, Martinez called O'Meara and terminated her employment. Have a Heart justified the termination in a letter stating that it was due to O'Meara missing two shifts on August 12 and 13. Have a Heart did not pay O'Meara for the period of August 9 through 17. On November 13, 2017, Martinez sent O'Meara a text message stating that Round had definitely harassed her and that Ryan Kunkel personally ordered her fired.

B. Procedure

On November 7, 2018, O'Meara filed suit against Have a Heart, alleging claims of (1) quid pro quo sexual harassment in violation of WLAD, (2) retaliation in violation of WLAD, (3) wrongful discharge, and (4) willful withholding of wages. The claims were tried without jury.

On January 21, 2020, the trial court issued written findings of fact and conclusions of law. The court concluded that O'Meara had established all claims, and entered judgment against Have a Heart for noneconomic damages, special damages, attorney fees, and costs.

Have a Heart appeals.

ANALYSIS

A. Credibility

Have a Heart argues that the trial court erred in determining that O'Meara's testimony was credible.[3] We disagree.

This court may not judge the credibility of witnesses or the weight of evidence. In re Dependency of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991). "Credibility determinations are solely for the trier of fact [and] cannot be reviewed on appeal." Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

Have a Heart asserts that O'Meara's testimony was not true, but rather was a product of her psychotic state during her interactions with Round. Have a Heart also explains O'Meara's account as "catastrophizing," a coping mechanism that O'Meara admitted to sometimes using. Finally, Have a Heart cites testimony from its expert witness regarding O'Meara's mental health diagnosis and behavior.

Have a Heart's assertions are attacks on O'Meara's credibility. The trial court permitted Have a Heart to cross-examine O'Meara. It likewise allowed Have a Heart to call its expert witness. Each of these resulted in a credibility determination from the trial court—a determination squarely within its purview. We will not disturb the trial court's credibility determination.

B. Round's Employment

Have a Heart argues that the trial court erred in finding that Round was an employee of Have a Heart Compassion Care, Inc. We disagree.

---

[3] On reply, Have a Heart recharacterizes their credibility argument as one of competency. This argument, raised for the first time in a reply brief, is too late to warrant consideration. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

We review challenged findings of fact for substantial evidence. Endicott v. Saul, 142 Wn. App. 899, 909, 176 P.3d 560 (2008). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). A party challenging a finding of fact bears the burden of showing that the record does not support it. Brin v. Stutzman, 89 Wn. App. 809, 824, 951 P.2d 291 (1998).

Have a Heart relies primarily on the fact that it payed Round on a project basis, and that he was a "1099" employee rather than a "W2" employee. The trial court found these distinctions irrelevant, but instead focused on how Have a Heart portrayed Round to employees, like O'Meara, and how the employees perceived Round as having apparent authority.[4] There is substantial evidence to support this finding.

Several individuals from Have a Heart testified as to Round's employment. O'Meara stated that Round was introduced to employees as "management" and "a person with authority." O'Meara's coworker, Wells, testified that Round was the "Director of Security," trained security people, and helped Have a Heart monitor security surveillance. Wells further testified that if Round said "to do something you would do it," and that "Round may not fire [her], but he would go to Ryan [Kunkel] to do it."

Store manager Martinez stated that he and employees all knew that Round "had Ryan [Kunkel]'s ear." Martinez further testified that Round attended management meetings and that while he did not hire or fire staff, he would "get into Ryan [Kunkel]'s ear to suggest promoting or firing someone." Have a Heart did not offer evidence to

---

[4] The WLAD protects from discrimination by an "Employer." An "Employer" includes any person acting in the interest of an employer, directly or indirectly. RCW 49.60.040(11). A "Person" goes beyond an employee, and can include individuals and agents. RCW 49.60.040(19).

refute this testimony. As such, there was substantial evidence to support the trial court's finding that Round was an employee of Have a Heart Compassion Care, Inc.

### C. Hearsay

Have a Heart argues that the trial court erred in determining that statements made by Round introduced through O'Meara were not hearsay. We disagree.

We review a trial court's evidentiary rulings for an abuse of discretion. State v. Lormor, 172 Wn.2d 85, 94, 257 P.3d 624 (2011). A trial court abuses its discretion when it exercises it on untenable grounds or for untenable reasons. Lormor, 172 Wn.2d at 94.

"Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Sisley v. Seattle Sch. Dist. No. 1, 171 Wn. App. 227, 232, 286 P.3d 974 (2012) (emphasis added). The hearsay rule, however, "is not violated when the fact that a particular statement was made is a relevant fact regardless of its truth." Burien Motors, Inc. v. Balch, 9 Wn. App. 573, 579, 513 P.2d 582 (1973). One way to determine if a statement is hearsay is to ask if it would only be relevant if it were true, in which case it is hearsay. See State v. Subsjoen, 48 Wn. App. 139, 147, 738 P.2d 306 (1987).

Here, the trial court considered a statement by Round introduced through O'Meara. O'Meara testified that Round told her that he could get her a safer and more lucrative position in inventory. The trial court did not consider this testimony for the truth of the matter asserted—that Round had the actual authority to obtain the position for O'Meara. Instead, the statement was offered to show that it was made, which was

relevant to establish O'Meara's claim of quid pro quo discrimination. Because the statement was not hearsay, trial court did not err in considering that the statement was made.

D. Round's Authority

Have a Heart argues that the trial court erred in finding that Round had the apparent authority to make employment decisions on behalf of Have a Heart. We disagree.

As to Round's authority and position with Have a Heart to make employment decisions the trial court found the following:

> 53. . . . that based on the testimony before the Court, Mr. Round had the apparent authority to make employment decisions on behalf of Have a Heart and would implement them through his relationship and influence on Mr. Kunkel. The Court finds that whether Mr. Kunkel was a "1099" employee of Have a Heart, as Have a Heart argues, or a "w2" employee is not relevant. Whether or not he was a "manager" on the company's organizational chart is also not relevant to how he was portrayed to the employees and perceived by them. The employees like [O'Meara], Ms. Wells and even Mr. Martinez were not privy to the employment agreement between Mr. Round and Have a Heart. Furthermore, how a person receives his/her compensation does not necessarily dictate the person's level of authority with the organization. What is relevant is that Have a Heart portrayed Mr. Round as a person in authority, as a person in management (he openly attended the management meetings) and as a person that the employees were required to listen to. Ms. Wells and Ms. O'Meara, both testified to his apparent authority "to cause" the firing of staff. Have a Heart did not refute [Mr. Martinez's] testimony that Mr. Round had Mr. Kunkel's ear and had an obvious influence of Mr. Kunkel's decisions including hiring/firing and moving employees. The open and obvious influence that Mr. Round had on Mr. Kunkel's decisions put Mr. Round in a situation with "apparent authority" to make employment decisions on behalf of Have a Heart. Mr. Round's influence on Mr. Kunkel was not hidden from employees. It was obvious to Mr. Martinez, Ms. Wells and Ms. O'Meara who were all aware of Mr. Round's close relationship with Mr. Kunkel, his influence on him and as a result were aware of Mr. Round's authority to make employment decisions and execute them through Mr. Kunkel. The Court therefore finds that it is credible that [O'Meara] would believe that Steve Round had a position of

-9-

authority at Have a Heart, that he had the authority to cause [O'Meara] to be fired and also had the authority to cause [O'Meara] to have a safe job in "inventory". The court therefore finds that [O'Meara] has shown that Mr. Round was in a position of apparent authority to make employment decisions on behalf of Have a Heart that would affect Plaintiff's employment.

Whether apparent supervisory authority exists in a particular case is a question of fact. Smith v. Hansen, Hansen & Johnson, Inc., 63 Wn. App. 355, 362-63, 818 P.2d 1127 (1991). We review the trial court's finding of apparent supervisory authority to determine if it is supported by substantial evidence. Smith, 63 Wn. App. at 362-63. As long as the substantial evidence standard is met, we will not substitute our judgment for that of the trial court. State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018).

Supervisory authority applies to an individual who employers "cloak with apparent authority to affect terms and conditions of their employee's jobs." Thompson v. Berta Enters., Inc., 72 Wn. App. 531, 538, 864 P.2d 983 (1994). Apparent authority exists when "[a] principal knowingly permits [an] agent to perform certain acts, or where he holds him out as possessing certain authority." Larson v. Bear, 38 Wn.2d 485, 490, 230 P.2d 610 (1951). Additionally, apparent authority exists when "[a] principal has placed [an] agent in such position that persons of ordinary prudence are led to believe and assume that the agent is possessed of certain authority, and to deal with him on reliance of such assumption." Larson, 18 Wn.2d at 490. Here, substantial evidence supports the trial court's finding that Round had apparent authority to make employment decisions on behalf of Have a Heart.

O'Meara testified that when Round came to the store, Martinez informed the employees that Round would observe them, that employees needed to do as Round asked, and that Round could fire employees if they did not adhere to protocols.

Martinez stated that Round acted as a senior, management individual. Round was present at management meetings and would come into the store to direct staff on policy. Martinez additionally testified that Round "had Ryan [Kunkel]'s ear," and "could talk to [Kunkel] and get [him] to come talk to you."

Ryan Kunkel testified that Round was originally hired by Have a Heart as an electrical contractor. But, because of Round's expertise, "Have a Heart eventually expanded responsibilities to managing Have a Heart's security staff and protocols."

Wells testified that Round trained security guards and that he was referred to as director of security. Wells stated that, while she did not view Round as her direct boss, she viewed him in a way that you respect the authority of someone who is above you. When asked if she took direction from Round, Wells replied: "I mean, yeah, if a supervisor at work tells you to do something, then you do it. I mean, he might not be the one to fire me, but he can go talk to Ryan."

In sum, the testimonies of O'Meara, Martinez, Kunkel, and Wells provide substantial evidence to support the trial court's finding that Round had apparent authority to affect the terms of O'Meara's employment.

E. Martinez's Liability

Have a Heart argues that the trial court erred in assessing individual liability against Martinez. Because Have a Heart failed to adequately brief this issue, we decline to address it.

We will not consider an argument unsupported by reference to the record or citation to authority. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Have a Heart dedicates a single paragraph to

-11-

Martinez's individual liability; it is devoid of reference or citation. Such passing treatment of an issue or a lack of reasoned argument is insufficient to merit judicial consideration. Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).

F. The WLAD

Have a Heart argues that the trial court incorrectly determined that O'Meara was terminated in violation of the WLAD. We disagree.

We review a trial court's findings and conclusions to determine if substantial evidence supports them and if those findings support the court's conclusions of law. Currier v. Northland Servs., Inc., 182 Wn. App. 733, 742, 332 P.3d 1006 (2014).

An employer is liable for unlawful retaliation under the WLAD when (1) an employee engages in a statutorily protected activity, (2) the employee suffers an adverse employment action, and (3) there was a causal link between her activity and adverse action. Currier, 182 Wn. App. at 742. Substantial evidence supports the trial court's findings and conclusions regarding all three elements.

In order to determine whether an employee was engaged in a protected activity, a court must balance the setting in which the activity arose and the interests and motives of the employer and employee. Coville v. Cobarc Servs., Inc., 73 Wn. App. 433, 439, 869 P.2d 1103 (1994). Here, the trial court properly found that O'Meara's reporting of sexual assault and sexual harassment by Round to the police was a protected activity. O'Meara's interest and motives were clear when she reported the assault and sought a restraining order.

The parties do not dispute whether there was an adverse employment action. O'Meara suffered an adverse employment action when Have a Heart terminated her employment.

Finally, substantial evidence supports the trial court's finding that there was a causal link between O'Meara's reporting of Round's actions and her subsequent termination: O'Meara had a history of satisfactory performance prior to her termination, and the termination followed immediately after she reported Round to Have a Heart; Martinez wrote O'Meara months after her termination, wherein he stated that Kunkel ordered O'Meara fired; Round was a protected member of Have a Heart, and Kunkel was not likely to take action against him; and the reasons for O'Meara's termination were not convincing. Because this causal link is established, Have a Heart is liable for unlawful retaliation under the WLAD.

G. Damages

Have a Heart argues that the trial court incorrectly awarded damages for wages withheld for O'Meara's paid leave. Have a Heart also argues that the trial court incorrectly awarded damages for emotional distress.[5] We disagree.

We review de novo the question of whether damages were proper for the cause of action. Bill & Melinda Gates Found. v. Pierce, 15 Wn. App. 2d 419, 436, 475 P.3d 1011 (2021).

RCW 49.60.030(2) provides remedies for a prevailing party, including recovery of actual damages, costs, and reasonable attorney fees. "Actual damages are 'a remedy

---

[5] Contrary to Have a Heart's assertion, the Industrial Insurance Act, RCW 51.04.010, does not bar claims against employers under the WLAD. See Goodman v. Boeing Co., 17 Wn.2d 401, 404-06, 899 P.2d 1265 (1995).

for full compensatory damages, excluding only nominal, exemplary, or punitive damages' that are 'proximately caused by the wrongful action, resulting directly from the violation of RCW 49.60.'" <u>Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160</u>, 151 Wn.2d 203, 216, 87 P.3d 757 (2004).

      1. <u>Paid Leave</u>

Have a Heart argues that the trial court incorrectly awarded damages for wages withheld pursuant to the paid leave that Have a Heart purportedly promised O'Meara.

The trial court found that:

93. . . . Ms. O'Meara had taken paid leave offered by Have a Heart subsequent to the attempted armed robbery. The Court makes this finding based on the testimony heard by the Court. Mr. Martinez had telephone contact with Ms. O'Meara as he testified, on August 9th he was aware of her emotional state. Subsequently when Ms. O'Meara and Ms. Wells entered the store, Mr. Martinez told Ms. O'Meara to leave (because Mr. Round was at the store) and that she was on leave. The Court finds that Ms. O'Meara had verbally informed Have a Heart that she was on paid leave. Have a Heart did not produce a procedure that Ms. O'Meara had to follow in order to notify the company of her intentions. Have a Heart had offered an open-ended paid leave "<u>as much as needed</u>". Ms. Wells testified that she had taken time off—left early by orally telling Mr. Martinez. The same procedure should apply equally to Ms. O'Meara. Have a Heart or Mr. Martinez never followed up with Ms. O'Meara regarding how much paid leave she needed. Have a Heart did not submit evidence that if an employee was on paid leave, that he/she was precluded from coming to the store. The fact that Ms. O'Meara had come to the store on August 8th (the day following the attempted armed robbery) by itself, is not evidence that she had decided against taking the offered paid leave. Neither Mr. Martinez, nor anyone else from Have a Heart confirmed with Ms. O'Meara if she did not intend to take the time off. Have a Heart did not rescind the offer of paid time off to Ms. O'Meara.

94. Ms. O'Meara unilaterally accepted Have a Heart Compassion Care Inc.'s offer to give her a week of paid time off on August 9, 2016.

95. Ms. O'Meara was on paid leave from Have a Heart Compassion Care Inc. from August 9-16, 2016.

As a threshold matter, Have a Heart asserts that O'Meara is not entitled to unpaid wages under RCW 49.48.010 because wages can only be sought for work performed. This assertion is incorrect. Washington courts have construed lost wage damages to "represent wages that the plaintiff would have received had she not been discharged." Gaglidari v. Denny's Restaurants, Inc., 117 Wn.2d 426, 449, 815 P.2d 1362 (1991).

We next determine if Have a Heart is bound by their offer of paid leave. We hold that they are.

We determine whether a contract is supported by sufficient consideration as a matter of law. Keeter v. John Griffith, Inc., 40 Wn.2d 128, 130, 241 P.2d 213 (1952).O'Meara was employed under an open-ended, terminable at-will employment agreement. This type of agreement may be unilaterally modified. Duncan v. Alaska USA Fed. Credit Union, Inc., 148 Wn. App. 52, 73, 199 P.2d 991 (2008).

Have a Heart's promise, through both Ryan and Sokha Kunkel, that O'Meara could take paid leave following the attempted robbery was a promise to increase her prospective compensation or benefits. See Govier v. North Sound Bank, 91 Wn. App. 493, 499, 957 P.2 811 (1998). O'Meara's decision to continue as an employee of Have a Heart when she was otherwise not required to is a detriment for consideration of Have a Heart's paid-leave promise. See, e.g., Storti v. Univ. of Wash., 181 Wn.2d 28, 37-38, 330 P.3d 159 (2014). As such, the trial court did not err in ruling that O'Meara could recover paid leave that she would have received but for her wrongful termination.

2. Emotional Distress

Have a Heart argues that the trial court incorrectly awarded damages for emotional distress.

The trial court found:

108. . . .that Ms. O'Meara suffered extreme emotional distress as a result of Defendants' harassment, retaliation, and termination.

109. Ms. O'Meara's pre-existing PTSD and related mental ailments were significantly worsened as a result of defendants' harassment, retaliation, and termination.

110. The Court finds Ms. O'Meara competent to testify about her own emotional distress. Additionally, the Court considered the testimony of Dr. John Olson, Dr. Christen Carson, other witnesses and exhibits admitted related to Ms. O'Meara's health. The Court considered the duration of contact and actions by Mr. Round and the impact of Mr. Round's actions as well as Have a Heart's actions (or lack thereof) on Ms. O'Meara.

In employment cases, plaintiffs are entitled to recover damages for emotional distress, humiliation, and pain and suffering. Cagle v. Burns and Roe, Inc., 106 Wn.2d 911, 919, 726 P.2d 434 (1986). Evidence supports an award of noneconomic damages where a plaintiff presents "proof of actual anguish or distress." Dean v. Mun. of Metro. Seattle Metro, 104 Wn.2d 627, 641, 708 P.2d 393 (1985). Evidence can be provided by the plaintiff's own testimony, healthcare professionals, or individuals close to the plaintiff. Bunch v. King County Dep't of Youth Servs., 155 Wn.2d 165, 181, 116 P.2d 381 (2005). It is the role of the factfinder to weigh the credibility of the plaintiff as a witness and determine if she in fact suffered mental anguish. Bunch, 155 Wn.2d at 181.

Here, the trial court properly found that O'Meara suffered emotional distress. O'Meara has a history of trauma that she has worked to overcome since childhood. Following a traumatic robbery where she was zip-tied and held at gunpoint for some

time, and her subsequent emotional interactions with Round, O'Meara's symptoms worsened. She attempted suicide. Following this attempt, O'Meara received medical assistance from Dr. Olson, and was referred to Harborview medical for treatment. Her fear of retaliation from Have a Heart—a fear that ultimately came to fruition—was a source of anguish, which exacerbated O'Meara's mental health symptoms. Based on O'Meara's testimony, and testimony from the medical professionals that treated her for these symptoms, the trial court properly awarded damages for emotional distress.

H. Costs and Fees

Have a Heart argues that the trial court incorrectly awarded O'Meara costs and attorney fees. We disagree.

We apply a two-part standard of review to a trial court's award of attorney fees: "(1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion." Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.2d 1100 (2012).

The trial court awarded costs and attorney fees as the prevailing party pursuant to RCW 49.60.030(2), which provides for the recovery of the cost of suit including reasonable attorney fees. See Blair v. Wash. State Univ., 108 Wn.2d 558, 572, 740, P.2d 1379 (1987). Because O'Meara prevailed at trial, this award was proper.

O'Meara requests costs and attorney fees on appeal. Under RAP 18.1, a party may request reasonable attorney fees on appeal if an applicable law grants the party the right to recover. Because RCW 49.60.030(2) provides for an award of costs and fees, and because we hold that O'Meara prevails on appeal, we award costs and fees.

-17-

Affirmed.

_____
Mann, C.J.

WE CONCUR:

_____
_____
Brunner, J