(No. 84-CC-1890—

MICHAEL REESE HOSPITAL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed Mach 24, 1992.*

LAWRENCE FRIEDMAN LAW OFFICES, for Claimant.

ROLAND W. BURRIS, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

## OPINION

SOMMER, J.

The Claimant hospital here seeks $4,457.12 from the Illinois Department of Public Aid (IDPA), pursuant to section 11—13 of the Public Aid Code (or "PAC," Ill. Rev. Stat. 1981, ch. 23, par. 11—13), for two days of "covered" inpatient care rendered during August 1982 to patient Turner, a Spenddown recipient of MANG (Medical Assistance-No Grant, per PAC section 5—2(2)) under IDPA's Medical Assistance Program (MAP). Respondent denies all payment liability for these medical services and contends that recipient Turner's

own $1,164.00 monthly payment obligation, under IDPA's Spenddown policy, is greater in amount than the per-diem-rate total ($882.80) which otherwise would have been payable by IDPA in the absence of Turner's Spenddown obligation.

Claimant's $441.40 inpatient per diem rate under its contract with IDPA—rather than its "private pay" rate— is the rate by which the dollar amount of liability for services rendered to IDPA recipients is determined (see section 5—5.11 of PAC 1983; and *Franciscan Medical Center v. State* (1991), 44 Ill. Ct. Cl. 431); and $441.40 was the payment rate which Claimant here properly utilized in calculating patient Turner's service charges. Thus, IDPA's contractual obligation to Claimant for these services, in the absence of Spenddown, would have been $882.80 (2 days care @ $441.40), not the $4,457.12 total of Claimant's private-pay charges.

The purpose of Spenddown is to ensure equitable consideration of certain "medically needy" persons having income and assets at levels greater in amount than the levels established as the "standard" for MAP eligibility as of right, but who may realistically be as indigent, because of the medical expenses which they incur, as other MAP-eligible recipients having lesser income or assets. The Spenddown-program enrollee and his or her medical vendors are all required to take an active part in the process of determining the point in time at which the enrollee's medical debts equal or exceed his or her own Spenddown obligation.

To become an eligible "recipient" in respect to medical services rendered during a given calendar month within the Spenddown enrollment period, the enrollee must be adjudicated by IDPA's local office to have incurred sufficient expenses for services rendered

during or prior to that month to "meet" (equal or exceed) the enrollee's own Spenddown obligation or "amount."

"Such action [is] to assure that the patient had paid or incurred sufficient medical-expense obligations ° ° ° to bring his income level within the monthly Spenddown 'standard' which IDPA had established for him, pursuant to federal Medicaid regulations (42 C.F.R. §§435.732 and 435.831) and IDPA Rules 120.10, 120.20, 120.30 and 120.60 [89 Ill. Adm. Code §§120.10, 120.20, 120.30 & 120.60] ° ° °. In effect, a Medicaid Spenddown-enrollee ° ° ° must comply with Spenddown requirements, and thereby re-establish his MAP eligibility, on a month-by-month basis." (*Franciscan Medical Center v. State* (1988), 40 Ill. Ct. Cl. 273.)

The enrollee is ineligible for MAP benefits during a given month, unless adjudicated by the local IDPA office to have "met" his or her Spenddown amount for that month, and unless the enrollee's vendors submit their related charges to that office promptly so as to permit adjudication to occur within the one-year period prescribed by regulation (42 C.F.R. section 447.45(d) and IDPA rule 140.20). Topics 105 and 141.2 of IDPA's MAP *Handbooks* for medical vendors; and *Mercy Hospital v. State* (1985), 38 Ill. Ct. Cl. 204.

Once IDPA's local office determines that the enrollee's Spenddown obligation for a given month has been met, the enrollee becomes a recipient (*i.e.*, MAP-eligible) as to all services rendered on and after his/her "Spenddown Met" date through the end of that month; and that office issues a Split Billing Transmittal (DPA form 2432) to each known vendor, reporting therein the dollar amount of the recipient's obligation to be listed as a credit or deduction on the vendor's invoice.

"The Department is not responsible for payment of expenses incurred that are used by the spenddown [recipient] toward meeting the spenddown obligation." (*Handbook* topic 105)

Such expenses, as reported in the DPA 2432, are the recipient's responsibility to pay. The vendor's invoice to IDPA must be restricted to charges for services rendered

on and after the recipient's Spenddown Met date (*i.e.*, for the period when the enrollee qualified as a "recipient"); must list charges calculated at IDPA's payment rate,

"with such charges reduced by the amount of the patient's Spenddown obligation pertaining to the charges dates of service." (*Franciscan Medical Center v. State* (1988), 40 Ill. Ct. Cl. 273.)

and must be submitted to IDPA within the one-year period prescribed by IDPA rule 140.20 (89 Ill. Adm. Code section 140.20) and section 447.45(d) of 42 C.F.R., with a copy of the DPA 2432 attached to the invoice *Handbook* topic 105.

In this case, patient Turner was obliged to assume liability for paying, from her own funds, the initial $1,164.00 (her Spenddown amount) in medical expenses which she incurred during August 1982, as determined by IDPA's local office. Her Spenddown Met date, as established by that office, was August 11th, the date of her admission to Claimant's facility. As Turner had not incurred any medical expense during that month prior to August 11th, and as her Spenddown obligation exceeded Claimant's $882.80 charge, Turner was responsible for paying Claimant's entire charge, with IDPA being responsible for her subsequent medical expenses incurred during that month.

Respondent has moved for summary judgment, pursuant to section 2—1005(b) of the Code of Civil Procedure (Ill. Rev. Stat., ch. 110, par. 2—1005(b)), asserting that Claimant's entire $882.80 charge is Turner's payment responsibility. Based upon the above discussion, the Court finds that Turner is solely liable for payment of these services, and therefore grants Respondent's motion.

It is therefore hereby ordered and adjudged that judgment as to all issues is entered against Claimant

65

Michael Reese Hospital and in favor of Respondent, and this claim is dismissed.