[No. 42567-0-II.    Division Two.    January 29, 2013.]

MULTICARE HEALTH SYSTEM, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

290

*Carla M. Dewberry* and *Roger L. Hillman* (of *Garvey Schubert Barer*), for appellant.

*Robert W. Ferguson, Attorney General,* and *William T. Stephens* and *Stephen S. Manning, Assistants,* for respondent.

¶1 PENOYAR, J. — Medicaid regulations provide a formula to determine what portion of medical bills the patients are responsible to pay. This case concerns the effect of that determination on the amount that Medicaid providers are paid for their services. Following an audit, a hearing officer and the Board of Appeals concluded that Multicare Health System, doing business as Mary Bridge Children's Hospital (Hospital), had been overpaid by the Department of Social and Health Services (Department) in 52 Medicaid claims for people qualified in the Medically Needy (MN) program. The hearing officer and the Board of Appeals determined that the Hospital's bills do not properly subtract each individual's "spenddown," which is the amount of medical expense liability the individuals must incur before they qualify for the MN program. The superior court affirmed the Board of Appeals' decision.

¶2 The Hospital argues that (1) it was not required to deduct the spenddown in its bills to the Department, (2) the audit failed to examine how each spenddown amount was calculated and how each bill applied to the spenddown, (3) the audit failed to account for individuals who received assistance from Indian Health Services, (4) the audit improperly applied the spenddown, and (5) the findings on each of the claims are supported by unreliable evidence. We hold that (1) regulations allow the Department to deduct the spenddown, which resulted in the overpayment here; (2) the audit did not have to examine how each spenddown amount was calculated for each individual or how each bill applied to the spenddown; (3) there is no evidence that there were individuals who received assistance from Indian Health Services; (4) the audit properly applied the spenddown; and (5) we do not consider arguments that solely incorporate by reference pleadings from proceedings below, thus we do not consider the Hospital's unreliable evidence claim. We affirm.

### FACTS

¶3 Multicare Health System operates Mary Bridge Children's Hospital in Tacoma. The Hospital has a contract with the Department to provide services to Medicaid recipients. One Medicaid program is the MN program for low-income families.

¶4 To qualify for the MN program, a family's income has to be less than a certain amount established by regulations (called the "medically needy income level") during a certain base period, usually between three and six months. Former WAC 388-519-0110(1) (1998);[1] *see, e.g.,* former WAC 388--478-0070 (2000). If the family earns over that amount, it can still qualify if, during that base period, it incurs liability on medical expenses equal to or over the income in excess of the amount needed to qualify for the MN program. Former WAC 388-519-0100(6), (7) (1998). The process of using up that excess income is called the "spenddown."[2] Former WAC 388-519-0100(8). Once the family has incurred its spenddown liability, it is enrolled in the MN program. Former WAC 388-519-0100(8). If hospital expenses are used to meet the spenddown, then the family is enrolled on the first day of the month when the expenses were incurred. Former WAC 388-416-0020(1)(a) (1998). Expenses used to meet the spenddown are not reimbursable by the Department. 42 C.F.R. § 435.831(i)(5).[3]

¶5 The Department conducted a claim-by-claim audit of the MN spenddown program rendered and billed by the Hospital from February 1, 2000, to January 1, 2006. The

---

[1] The regulations cited were in effect for the entire time period at issue—2000 to 2006—unless otherwise noted.

[2] For instance, if the base period is three months and a family needs to have an income of $1,000 during those three months to qualify, but makes $1,500, the spenddown amount is $500. That is, the family must first incur $500 in liability for certain medical expenses before it can qualify for the MN program.

[3] This regulation was amended in 2012; however, the changes were minor and do not affect the sections at issue here. Therefore, we refer to the current version.

audit examined the Hospital's compliance with federal and state regulations relative to claims the Department paid for services provided under the MN program. The Department concluded that the Hospital failed to deduct the patients' spenddown liability in 52 of 59 bills that the Hospital submitted to the Department, resulting in an overpayment to the Hospital.

¶6 Following the audit, the Department assessed an overpayment of $233,612.57. The Hospital appealed, and after a four-day hearing, the hearing officer determined that the Department overpaid the Hospital $214,397.76. The Board of Appeals affirmed. The Hospital petitioned the superior court for review, and the superior court affirmed. The Hospital appeals.

## ANALYSIS

I. STANDARD OF REVIEW

¶7 Under the Administrative Procedure Act, ch. 34.05 RCW, we sit " 'in the same position as the superior court.' " *Burnham v. Dep't of Soc. & Health Servs.*, 115 Wn. App. 435, 438, 63 P.3d 816 (2003) (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998)). The Hospital bears the burden to demonstrate that the Department's action was invalid. RCW 34.05.570(1); *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 381, 932 P.2d 139 (1997). When reviewing the agency decision, we review issues of law de novo. *In re Disciplinary Proceeding Against Brown*, 94 Wn. App. 7, 12, 972 P.2d 101 (1998). We can substitute our judgment for that of the administrative body, but we give substantial weight to the agency's interpretation of the law it administers, especially when the issue falls within the agency's expertise. *Brown*, 94 Wn. App. at 12.

¶8 We review an agency's factual finding for substantial evidence, viewed in light of the whole record before us. *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 607, 903 P.2d

433 (1995). "Substantial evidence" is " 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.' " *Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d at 46 (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)).

## II. THE MN PROGRAM

¶9 Washington has chosen to participate in the federal program providing coverage to the medically needy. RCW 74.09.700.[4] As a result, the Department must establish eligibility requirements, including the minimum levels of incurred medical expenses, before an individual becomes eligible. RCW 74.09.700(1). An individual must apply all nonexempt income and resources to the cost of his or her medical care services. RCW 74.09.700(3). This process includes meeting the spenddown. Former WAC 388-519--0100(8).

¶10 During the time frame relevant here, when examining whether a family's incurred medical expenses count toward the spenddown, the Department does not first look at the bills in chronological order. Former WAC 388-519--0110(7). Rather, it prioritizes medical expenses in the following manner: (1) Medicare premiums, health insurance deductibles, and coinsurance charges; (2) medical expenses that the Medicaid program does not cover; (3) prior unpaid bills; (4) hospital expenses; (5) bills that are potentially payable by Medicaid; and (6) prescription claims.[5] Former WAC 388-519-0110(7).

¶11 There are different rates for services, depending on whether Medicaid is involved. The Hospital has a usual, customary, and reasonable charge (or total charge), which it

---

[4] This statute has been amended since the time period at issue here. However, the amendments were minor and do not affect our analysis. Therefore, we cite to the current version.

[5] Prescription claims were prioritized after the audit of the Hospital. Also, prior unpaid bills are prioritized third, but are not listed in former WAC 388-519--0110(7). As explained below, this works to the Hospital's benefit.

bills a client for services if no insurance or Medicaid is available. Once a family qualifies for the MN program, the Department pays the Hospital for each service at a reduced, negotiated rate. For purposes of determining whether a spenddown has been met, the Department uses the Hospital's total charge for the liability.

¶12 A MN beneficiary becomes enrolled once he has incurred his spenddown liability. 42 C.F.R. § 435.831(i)(4). But the starting point can vary. If a hospital expense was used to meet spenddown, coverage would begin at the beginning of the month in which the hospital expenses occurred. Former WAC 388-416-0020(1)(a); 42 C.F.R. § 435.831(i)(4).

¶13 Expenses used to meet spenddown liability are not reimbursable, and when necessary to avoid transferring the patient's liability to the program, the amount the Hospital charges that would otherwise be reimbursable must be reduced:

> Expenses used to meet spenddown liability are not reimbursable under Medicaid. To the extent necessary to prevent the transfer of an individual's spenddown liability to the Medicaid program, States must reduce the amount of provider charges that would otherwise be reimbursable under Medicaid.

42 C.F.R. § 435.831(i)(5).

¶14 This interaction between the spenddown, the total charges, and the negotiated Medicaid rate leads to different scenarios. To understand these scenarios, it is helpful to provide several examples:

- A patient has a spenddown liability of $500, total hospital charges of $450, and a negotiated rate of $200. Here, the total charges would apply to the spenddown liability, resulting in a new spenddown of $50. Since a spenddown remains, the patient would not qualify for the MN program and would owe the Hospital the $450. *See* RCW 74.09.700; former WAC 388-519-0100(6)-(8).

- A patient has a spenddown liability of $500, total hospital charges of $4,000, and a negotiated rate of $2,000. Here, the total charges would meet the spenddown, resulting in the patient qualifying for the MN program. The patient would owe $500, and because the patient now qualifies (and did since the beginning of the month) for the MN program, the negotiated rate of $2,000 would apply.

- A patient has a spenddown liability of $500, total hospital charges of $2,000, and a negotiated rate of $450. Here, the total charges would meet the spenddown, resulting in the patient qualifying for the MN program. But the Department would not owe the Hospital anything since the negotiated rate is less than the spenddown.

¶15 Because of the back and forth between the Hospital, the Department, and the patient, there may be a lag in time from the day hospital expenses were incurred and when the Hospital finds out that the patient met the spenddown by his or her bill. *See* former WAC 388-502-0150(3) (2000). According to billing procedures, the Hospital nonetheless must note the amount of its bill that applies to the spenddown. Otherwise, the Department might pay the Hospital the negotiated rate, regardless of whether the bill applied to a spenddown.

¶16 This is exactly what the hearing officer and Board of Appeals found had occurred. The Hospital sent its bills for its patients to the Department without mentioning any applicable spenddown, despite instances when the Hospital possessed information that the patient had to meet a spenddown before qualifying for the MN program. The Department, in turn, paid the Hospital the negotiated rate, without any adjustment for the applicable spenddown. According to the hearing officer, the Board of Appeals, and the superior court, this constituted an overpayment.

¶17 With that background in mind, we now turn to the Hospital's arguments.

III. The Department Does Not Pay the Hospital the Spenddown

¶18 The Hospital first challenges the underlying basis for the audit: that the Department can deduct the spenddown from its payments to the Hospital. The Hospital argues that there is no authority for the Department to deduct the spenddown from its payments to the Hospital and that spenddown is only an enrollment qualification calculation, not a deduction from payments. But the regulations plainly provide that the Department is not to reimburse the Hospital for spenddown liability, so the Hospital's arguments fail.

¶19 Federal regulations provide, "Expenses used to meet spenddown liability are not reimbursable under Medicaid." 42 C.F.R. § 435.831(i)(5). As soon as the services are provided, their cost is to be applied to the patient's spenddown liability: "An expense is incurred on the date liability for the expense arises." 42 C.F.R. § 435.831(d); *United States ex rel. Humphrey v. Franklin-Williamson Human Servs., Inc.*, 189 F. Supp. 2d 862, 871 (S.D. Ill. 2002) ("[c]learly, the word 'incur' connotes taking on a liability"); *Cohen ex rel. Cohen v. Quern*, 608 F. Supp. 1324, 1327 (N.D. Ill. 1984) (" 'incurred' [is] generally . . . defined as 'becom[ing] liable or subject to' " (third alteration in original) (quoting *Gadway v. Blum*, 567 F. Supp. 772, 775 (N.D.N.Y. 1983))).

¶20 These regulations are consistent with the Department's position. It cannot reimburse the Hospital for the spenddown; the patient is liable for that amount.[6] If the

---

[6] We have found one case analyzing this issue, and it supports our conclusion, *Michael Reese Hosp. v. State*, 44 Ill. Ct. Cl. 61, 1992 WL 12147804, 1992 Ill. Ct. Cl. LEXIS 3. That court concluded that when a patient incurs expenses that exceed the spenddown but the negotiated rate is less than the spenddown, the patient owes the hospital the negotiated rate and the State owes the hospital nothing. *Michael Reese Hosp.*, 1992 WL 12147804, at *2-3, 1992 Ill. Ct. Cl. LEXIS 3, at *3-6. Although Illinois, unlike Washington, is a § 209(b) state, this case is still instructive. Section 209(b) status affects income requirements for Medicaid eligibility, it does not exempt participating states from the federal spenddown requirements at issue here. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 38 n.5, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981) ("States exercising the § 209(b) option were

Hospital fails to deduct the spenddown from its bills to the Department, the result is an overpayment of a non-reimbursible spenddown expense. Other regulations also show that we must reject the Hospital's argument that spenddown is only an enrollment qualification and not a deduction from eligible reimbursement for the Hospital. For instance, the Hospital's eligibility for reimbursement begins only after the applicable spenddown liability is incurred: once the spenddown amount is known, the qualifying medical expenses are subtracted from it "to determine the date of eligibility" for the individual. Former WAC 388-519-0110(7). And the federal regulations clearly contemplate that the Department can adjust the Hospital's charges based on the spenddown, providing that "States must reduce the amount of provider charges that would otherwise be reimbursable under Medicaid" to prevent transferring an individual's spenddown liability. 42 C.F.R. § 435.831(i)(5).[7]

¶21 These regulations thus envision that spenddown is used not only to determine eligibility but also as part of the calculations to determine how much the Department owes the Hospital for services rendered once the individual qualifies for the MN program. Thus, in each case where the Hospital submits a bill to the Department, it needs to take two steps. First, it should determine if the patient is Medicaid eligible. It should do this using its total charge. Second, it needs to determine what reimbursement it is entitled to. It should do this by billing the Department for the negotiated rate for the services. But it must subtract the patient's spenddown liability from this amount to assure that the patient's debt is not being transferred to the Department. 42 C.F.R. § 435.831(i)(5). The audit and subsequent decisions by the administrative law judge and Board of

required to adopt a 'spend-down' provision."); *Michael Reese Hosp.*, 1992 WL 12147804, at *1, 1992 Ill. Ct. Cl. LEXIS 3, at *3 (citing 42 C.F.R. § 435.831).

[7] WAC 388-519-0100 and -0110 have since been modified to clarify that this is how the process works. *See* WAC 182-519-0110(17)-(19).

Appeals corrected the Hospital's failure to comply with this process. The Hospital's arguments to the contrary fail.

## IV. THE HOSPITAL'S OTHER ARGUMENTS FAIL

¶22 The Hospital makes several arguments disputing the audit's conclusions. In the end, it offers no evidence that any of the spenddown calculations were done improperly.

¶23 At the outset, it is important to remember that the burden of demonstrating a mistake is on the Hospital. *Hillis*, 131 Wn.2d at 381. Thus, it is not enough for the Hospital to generally claim that the record does not support the Department's reimbursement claim. The Hospital points to arguments made to the tribunals below, apparently attempting to incorporate them by reference. It later asks us to consider two appendices also presented to the tribunals below, totaling 114 pages, challenging each overpayment claim. But Washington courts "have consistently rejected attempts by litigants to incorporate by reference arguments contained in trial court briefs, holding that such arguments are waived." *Kwiatkowski v. Drews*, 142 Wn. App. 463, 499-500, 176 P.3d 510 (2008); *see U.S. W. Commc'ns, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 111-12, 949 P.2d 1337 (1997); *State v. Kalakosky*, 121 Wn.2d 525, 540 n.18, 852 P.2d 1064 (1993). We cannot and will not comb through the record on the possibility that some mistake may lie somewhere within. The burden is on the Hospital to point to specific error, but it has failed to do so.

¶24 The Hospital's briefing offers several claimed deficiencies in the Department's calculations, all of which are unpersuasive. The Hospital claims that bills were overcredited to spenddown, but that would favor the Hospital and the audit accounted for those situations. The Hospital claims bills were applied in the wrong order but does not claim that would affect its reimbursement. To the extent that the Department did not apply bills toward spenddown in the order required by regulations by including prior unpaid bills, this worked in the Hospital's favor by

decreasing spenddown liability. Prior unpaid bills were prioritized third but were not listed in former WAC 388-519-0110(7). Hospital expenses were prioritized after prior unpaid bills, so the Hospital would benefit from having less spenddown liability. And the Hospital has provided no evidence suggesting that the priority of expenses affected the amount of spenddown assigned to it. The only improper calculation that could have harmed the Hospital would have been an understated credit against the spenddown, and there is no suggestion that that ever occurred.

¶25 The Hospital also argues that patients in several records had Indian Health Services coverage, which means that the Department could not use these expenses to meet spenddown. But the Hospital presented no evidence showing that Indian Health Services was responsible for payment on the expenses, aside from its own assertions. The Hospital's argument fails.

¶26 The Hospital also disagrees with the Department's rate calculation for inpatient stays. Once a person qualifies for the MN program, the Department develops a rate for the entire hospital stay even if only the final days of the hospital inpatient stay were covered by the MN program. This calculation is proper because eligibility begins on the first day of the month in which hospital expenses meet the spenddown amount. Former WAC 388-416-0020(1)(a). Thus, all of the patient's medical expenses for the month, including time spent in the hospital prior to meeting the spenddown, are covered under the MN program.[8]

¶27 Finally, the Hospital challenges the administrative law judge's and Board of Appeals' findings on each overpayment claim by attempting to incorporate by reference its appendices. As explained above, this approach is improper,

---

[8] In a brief paragraph, the Hospital hypothesizes that if the Department paid for eligible outpatient services, those charges should have been disallowed and the payment recalculated. It cites no authority for this proposition, and as it notes, the Board of Appeals did not identify any outpatient charges that were appropriately used to meet spenddown.

and we reject the Hospital's attempt to bootstrap a lengthy argument to its brief.[9]

¶28 We affirm.

JOHANSON, A.C.J., and QUINN-BRINTNALL, J., concur.

After modification, further reconsideration denied July 2, 2013.

---

[9] The Hospital also argues that the audit, and therefore the subsequent decisions, are unreliable because they did not analyze how each patient's spenddown was calculated and which of the Hospital's bills could be used by the patient to meet the spenddown. The Hospital cites no authority requiring the audit to examine how each patient's spenddown was calculated. Whether a patient was correctly enrolled or whether the Department considered the correct medical expenses when determining eligibility are issues between the Department and the client, not the Hospital. Former WAC 388-472-0005(1)(j) (2002). The Hospital's right to a hearing stems from the Department's assessment of an overpayment, not from eligibility determinations. RCW 43.20B.675. Regarding the argument that the audit did not analyze all of a patient's bills, there is no evidence that bills that qualify for spenddown have been omitted. The Hospital's arguments fail.