# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DARCI COOPER, | No. 58216-3-II |
| Respondent, | |
| v. | |
| GERMAN WISE DENTAL LLC dba LOWER COLUMBIA ORAL HEALTH; SAM WISE, an individual; and RIMA WISE, an individual, | UNPUBLISHED OPINION |
| Appellants. | |

GLASGOW, J.—Darci Cooper was an assistant in a dental office. Sam and Rima Wise took over the dental practice where Sam Wise was the dentist and Rima became the office manager. Wise[1] immediately started making frequent inappropriate comments to members of his staff, including Cooper. Despite warnings, he made daily inappropriate comments to or about patients and staff that were sexual in nature or gender based. Cooper and other employees complained but Wise responded that he had unfettered freedom to say what he wanted and any staff who did not like his comments should leave. Wise told his human resources manager to fire anyone who complained and to space out the terminations to avoid any lawsuits. Cooper was eventually fired after complaining and making negative statements about the dental practice in a letter supporting

---

[1] Because Sam and Rima Wise share a last name, we refer to Sam Wise as "Wise" and Rima Wise by her first name for clarity.

a coworker's unemployment claim. After she was fired, Cooper did not receive promised bonuses or severance payments.

Cooper sued Wise, Rima, and German Wise LLC dba Lower Columbia Oral Health for gender discrimination, specifically hostile work environment; wrongful termination; breach of contract; and meal period violations. At trial, Cooper testified and presented corroborating testimony from several coworkers. Wise admitted to making almost all of the inappropriate comments but argued that they were taken out of context and that the comments were an innocent result of his cultural differences or imperfect English. The jury found the Wises had created a hostile work environment and wrongfully terminated Cooper. The jury awarded her a total of $700,000 in noneconomic damages for those claims. The jury also found that Wise breached his contract with Cooper and willfully withheld wages through meal period violations and unpaid severances and bonuses.

The Wises challenge evidentiary rulings, the amount of noneconomic damages, and a discovery sanction. Cooper argues that the appeal is untimely and, alternatively, that the Wises' arguments are unpreserved or without merit. We affirm.

FACTS

I. EMPLOYMENT TERMS

In April 2019, Wise purchased Lower Columbia Oral Health, a clinic where Darci Cooper had worked as a dental assistant for many years. Cooper was a "remarkable employee" and the clinic's former owner had no concerns about her job performance. 1 Verbatim Rep. of Proc. (VRP) at 477. Shortly after Wise took over the clinic, Wise and Cooper signed an employment contract

providing that Cooper was entitled to 30 days of severance pay if she was terminated with fewer than 30 days of written notice.

A few months later, Wise promoted Cooper to clinic manager and promised her a corresponding $200 bonus per pay period. Cooper received three bonus payments as promised and then the bonuses stopped. For months, Wise promised that he would pay the bonuses later but eventually he told Cooper that he did not plan to pay the bonuses because he could not afford them. Cooper was "okay with that" moving forward but still expected the bonuses she was already owed before she agreed to forgo future bonuses. 1 VRP at 186. She made many requests for the back due bonuses.

## II. Work Environment

In his first staff meeting as the new clinic owner, Wise made comments that left Cooper shocked and uncomfortable. For example, Wise commented that he liked to work with women because women lacked ambition. Wise also told the all-female clinic staff "that he didn't care if [staff] seduced patient[s] to get money." 1 VRP at 174.

The former owner, who attended the meeting and heard the comments, told Wise "that he can't say those things," and Wise responded that "he can say what he wants" under "free speech," and that "there's different cultures, and you have to be accepting of who he is." 1 VRP at 468. The former owner also told Wise via e-mail that the "'comments you made to the staff on Monday violated so many workplace laws, I don't know where to start. . . .Telling the staff they need makeovers and that you want models working up front is illegal.'" 1 VRP at 472-73. Wise refused to change his behavior.

Wise continued to make similar comments almost daily, causing Cooper to feel uncomfortable and embarrassed. He commented frequently on the appearance and weight of female employees: "that they should wear more makeup, that they should dress differently," and that they "should look like models." 1 VRP at 194. He told a female employee that she looked "sexy" and told other employees to lose weight. *Id.* He made comments about female patients as well, including comments to teenage patients about their breasts, in front of staff and patrons. He rested instruments on female patients' chests rather than on an instrument tray, something Cooper had never seen before. He talked openly about how he liked to hire sex workers. Wise and Rima made employees keep the dressing room door propped open while they changed into and out of scrubs, something they were required to do every day, commenting that "it's not like everybody hasn't seen a naked woman before." 1 VRP at 200.

Cooper and other employees complained about Wise's conduct and Wise responded that he had freedom of speech to say whatever he wanted. After hearing complaints, the former clinic director warned Wise in writing that he could not make comments about staff members' appearance, expressing concern about sexual harassment. Wise responded:

> "I suggest any lady who cannot live in the environment should leave. . . . I have to be myself. If they cannot handle this work. Please, you fire whomever complains. Just do it one by one. . . . We should be one step ahead. Whomever you think may cause a trouble, just fire her. No immunity to anyone. Just handle the good timing."

2 VRP at 567-68.

Wise later posted a written policy stating:

> "Dr. Wise preserves his right of unlimited freedom of speech to express his opinion by words or acts. His statements or acts could be considered offensive or inappropriate to other cultures. Under no circumstances any employee can consider his statements, behaviors inappropriate, offensive, or harassment.

4

"All employees agreed to waive all their rights for any legal litigation or any type of slandering against Dr. Wise for whatever act or statement he says. If anyone doesn't like his way of speech or the way he acts, he or she is free to leave after a written two-week notice. This is a private business owned completely by Dr. Wise. Whomever doesn't like his way should leave without criticism.

"Negative comments, even in private conversation, will be considered a breach of the honor code and could be punished by decreasing the monthly evaluation of the employee. That may affect the hourly pay for the coming pay period and/or the bonuses."

1 VRP at 210-11. The policy also provided that any negative comments about Wise would be grounds for termination. Finally, the policy provided that remaining on the team for three days after its posting would be considered an acceptance of the policy.

Cooper found the policy offensive and voiced concerns about the policy but did not quit because she did not have another job lined up. Two other clinic employees quit because of the policy and Cooper wrote a statement in support of one former coworker's application for unemployment benefits. In the letter, Cooper described the workplace policies as "'ridiculous'" and expressed her belief that the coworker was treated unfairly and ultimately pushed out because of her looks. 1 VRP at 216. She also described the clinic as a "'hostile work environment'" and explained that Wise had "'unrealistic expectations.'" VRP at 216-17.

### III. TERMINATION

According to Cooper, Wise obtained a copy of the letter and fired Cooper, angrily waving the letter as he told her to collect her things and leave. Wise denied ever seeing the letter until after he fired Cooper, stating instead the he fired her for "treason" by referring patients to another dentist and "not doing her job." 2 VRP at 544.

5

Wise did not explain any performance related reason for terminating Cooper's employment and had given Cooper a raise the previous month. When Cooper requested a written termination notice, Wise e-mailed Cooper a termination letter stating:

> "You have been terminated for the following reasons: dishonesty and disloyalty was proven against you by many incidents. When your husband came to my office and explained how dishonest you were stabbing me in the back, I held back till I found all the proof about his allegations. . . . As your husband said, you were working as a spy to sabotage the business from inside. You used your position to collect information that you thought may hurt me. I gave you many raises you didn't deserve, but you didn't honor that. This decision is irreversible. You will receive your pay with other employees on time."

1 VRP at 222-23. Cooper did not receive a severance payment. She texted Wise multiple times with request for back due wages and bonus payments.

Cooper had never been fired before and was embarrassed because she preferred to stay in her jobs for long periods of time. Cooper recently left her husband after a "rocky" relationship and had no income, so she moved in with her adult daughter. 1 VRP at 222. She looked for work but had a hard time due to pandemic related closures. She was unemployed from March 2020 until June 2021 when she got a job at another dental clinic.

## IV. PROCEDURAL HISTORY

Cooper sued the clinic and the Wises for gender discrimination via hostile work environment, wrongful termination, and failing to provide meal periods.[2] She sued Wise individually for breach of contract based on the unpaid severance and bonus payments. She claimed that she was entitled to double damages because the Wises willfully deprived her of wages.

---

[2] Cooper originally brought some of her claims solely against the clinic but amended her complaint to add the Wises as individual defendants after the clinic filed for bankruptcy, staying the claims as to the clinic. Cooper also sued for unfair practices but voluntarily dismissed this claim before trial.

A.      Pretrial Proceedings

1.      Denial of Cooper's motion for $10,000 in sanctions

After many months of discovery, Cooper moved to compel discovery and for $10,000 in sanctions as well as attorney fees and costs. The court found the Wises intentionally failed to meet their discovery obligations and ordered the Wises to pay attorney fees and costs but denied Cooper's request for $10,000 in sanctions. The court later imposed a total of $10,122.35 in attorney fees and costs and set a payment deadline in two separate orders. The court calculated the amount of fees according to the lodestar method, applying the relevant lodestar considerations. The Wises did not meet the deadline and Cooper moved for nonmonetary sanctions.

The court heard evidence and argument about whether the Wises' failure to pay court ordered attorney fees was willful, including testimony about the Wises' financial situation, diminished income, and mounting cost of litigation. The court determined it could not rule that there was willful disobedience and denied the motion for nonmonetary sanctions. Instead, it reduced the attorney fee award to judgment with pre and post judgment interest.

2.      Exclusion of the Wises' character witnesses

Cooper moved to exclude, as improper character evidence, the testimony of employees who worked at the clinic and patients who attended the clinic only after Cooper was fired. The Wises responded that the employees' testimony was relevant to whether Wise's conduct was offensive because "things may have been said during their employment that are similar to some of the statements that [Cooper] [] alleged," and they could testify about "whether or not that caused them to feel the same feelings." 1 VRP at 127. The Wises' counsel expressed that this would aid the jury in applying the reasonable person standard.

The trial court granted the motion to exclude the Wises' proposed character witnesses and explained that testimony about events and patient or employee experiences that occurred after Cooper's termination were not relevant. The court also explained that testimony about others' reactions to similar behavior from Wise was not an appropriate or relevant consideration under the reasonable person inquiry. The Wises did not seek to make an offer of proof of who the excluded witnesses were or what exactly the witnesses would say.

B.      Jury Trial

        1.      Testimony at trial

Cooper testified about the employment relationship, workplace culture, and her termination as described above. Other clinic employees and the former clinic owner provided extensive corroboration. Cooper gave specific examples of the way Wise treated her. For instance, she testified, "He made multiple comments about my weight." 1 VRP at 195. She also testified, "There was a time when I was having problems with an eye infection. I wasn't able to wear any eye makeup, and he noticed it right away and told me that I looked better with makeup on, that I should be wearing makeup." *Id.*

Cooper also explained the negative emotional effects of Wise's harassment and another employee recalled Cooper's distress after Wise made comments about her body. Describing the first staff meeting, Cooper testified, "I was shocked and couldn't believe what I was hearing" and "It made me feel really uncomfortable, wondering what was going to happen next." 1 VRP at 174. She also explained that she was offended by the policy and wanted to quit but stayed because she did not have another job. She explained that Wise's ongoing comments made her uncomfortable and embarrassed. She also testified that Wise made inappropriate comments about his young

8

patients' breasts, as well as telling patients to lose weight. When asked how the comments made her feel, Cooper replied, "Horrible. Sorry. I felt bad for them. You could see the hurt and their embarrassment, and I just had to sit there, and there was nothing that I could do, and so I felt bad for them." 1 VRP at 198.

Wise largely admitted that he made the alleged comments but claimed they were taken out of context. For instance, Wise admitted to calling an employee "'sexy'" but maintained that the employee replied, "'Thank you, and you too. By the way, you should say something else.'" 2 VRP at 566. When asked about his comments toward his employees, he explained, "I used 'hot' interchangeably with 'beautiful' multiple times, until they told me otherwise." 2 VRP at 569. He testified that he wanted his employees to look like models, stating, "They're modeling what I sell. I sell smiles." 2 VRP at 518. Wise admitted to making derogatory comments about the appearance of women as well but denied his comments amounted to sexual harassment, even when his human resources manager disagreed. He also acknowledged that he "probably" made comments about the breasts of teenage patients. 2 VRP at 539.

Wise admitted to posting the policy described above but said it was "only a draft." 2 VRP at 553. He explained that although he tried to enforce the policy, he was unable to because he was "too weak" and his employees were "controlling." *Id.* He accused Cooper of manipulating the document presented at trial to make him look bad, but he had stipulated to the admission of the document and did not object to its introduction at trial.

Rima also testified. She explained that there were instances when Cooper worked fewer overtime hours than reported on Cooper's timesheets. She testified, "[A]fter reviewing the hours, we know that she got overpaid." 1 VRP at 450. Cooper did not object to that statement. The

statement was consistent with Cooper's earlier testimony that she was overpaid at least once because Rima often made errors when calculating employees' timesheets.

The Wises' counsel handed Rima a document that is not in our record that apparently reflected Rima's "review of [Cooper's] wages a year and a half later." 2 VRP at 693. After the Wises' counsel asked Rima several questions about the document and payments to Cooper, Cooper objected on relevance grounds and stated, "I don't believe Defendants have an offset claim." 1 VRP at 453. The court sustained Cooper's objection after a sidebar that was not reported. The Wises did not make any argument or offer of proof on the record at that time, did not make another attempt to lay a foundation for admitting the document, and never offered the document into evidence.

2.      Evidentiary rulings regarding text messages

The Wises presented several text message conversations through documentary evidence, including messages from Cooper to Wise requesting payment for unpaid bonuses. The Wises offered and the court admitted those text messages as exhibit 109 during their cross-examination of Cooper. The Wises elicited testimony that Cooper was unsure about exactly how many bonus payments were missed but believed she was owed seven $200 payments. Cooper did not object to the document or any questions related to it.

Later, the Wises attempted to introduce other text messages and Cooper objected because the messages were not produced in discovery. The court found that the Wises willfully violated their CR 26(e) duty to seasonably supplement discovery and violated an earlier court order barring them from introducing responsive documents not produced by the discovery deadline. The court reasoned that the violation was willful because Wise mentioned the text messages in his deposition,

so the Wises' counsel was aware of them and counsel had a continuing obligation to supplement discovery. After balancing the totality of the circumstances, the court imposed sanctions but permitted the use of the messages for impeachment purposes. The court reserved the amount of the sanctions for a later time.[3]

During trial, the Wises sent Cooper three more packets of text messages that the parties do not dispute were not fully produced prior to trial. All three potential exhibits were text messages between the human resources manager and Wise regarding collateral matters. The court heard the Wises' argument as to why the exhibits should be admitted and the court excluded all three documents after determining they were minimally relevant, if at all.

### 3. Closing arguments

Cooper's closing argument focused on the Wises' brazen attitude that they were above the law, and asked the jury to "prove Dr. Wise and Ri[ma] Wise wrong" by "[s]how[ing] them that nobody is above the law." 2 VRP at 627. Cooper also emphasized that her testimony was corroborated by her former coworkers' testimony.

By contrast, the Wises argued that Wise's comments were innocent reflections of Wise's cultural differences and because cosmetics were a part of dentistry. Wise also admitted that some of his comments could be perceived as offensive but attempted to downplay the emotional impact the comments made on Cooper. The Wises did not address the amount that Cooper was requesting in damages.

---

[3] Later, after the verdict, the court entered a sanctions award of $2,500 for this violation and other similar violations.

4.      Jury question and verdict

Shortly before reaching its verdict, the jury submitted the following question: "Are questions #3 [noneconomic damages for gender discrimination] and #5(a) [noneconomic damages for wrongful termination] two sep[a]rate amounts or [are] they a combined total[?]" Clerk's Papers (CP) at 477. After hearing from the parties off the record, the court responded, "They are two separate claims." *Id.* After going back on the record, the court asked if the parties would like to make a record of their positions regarding the jury's question and the parties declined.

The jury found that the Wises engaged in gender discrimination by creating a hostile work environment and awarded $350,000 in noneconomic damages on that claim. It found that Cooper was wrongfully terminated and awarded $61,632 in economic damages and $350,000 in noneconomic damages for that claim. It found that Wise breached his contracts with Cooper and willfully withheld wages in the amount of $1,400 for unpaid bonuses and $3,840 for the unpaid severance payment. It also found that the Wises willfully withheld $1,320 for missed meal periods. The jury awarded Cooper a total of over $750,000.

C.      Posttrial Procedure

1.      Sanctions award

Shortly after the verdict, the court heard argument regarding sanctions for the Wises' discovery violations. Cooper argued that the Wises sought admission of "at least four documents" at trial that were responsive to discovery requests, yet not timely produced, apparently referring to text message exchanges referenced above. 2 VRP at 658.

The Wises acknowledged the text messages between Wise and the female employee that were the subject of the court's prior sanctions ruling and did not dispute that Cooper was entitled

to sanctions for that document. However, the Wises asked that the court not impose sanctions for other documents. Cooper did not request a specific amount of sanctions and the Wises asked that the court "consider nominal sanctions" given that the jury decided against them. 2 VRP at 659.

The court made an oral finding that the Wises violated the court's previous order preventing the Wises from using any responsive document at trial if it had not been timely produced. The court did not specify whether its ruling was based on all four instances that Cooper requested sanctions for but referred to "things that were provided during trial that were in violation of the Order." *Id.* The court acknowledged that given the verdict, the violations "didn't seem to have a negative impact on the Plaintiff's case" but stated that "it certainly isn't something that the Court condones." *Id.* The court entered a sanctions award of $2,500.

2.      Motion for new trial

After the verdict, before a judgment was entered, the Wises moved for a new trial and in the alternative, for a remittitur. They presented three arguments.

First, the Wises argued that the court abused its discretion in excluding the testimony of former clinic employees regarding "Wise's pattern of behavior towards women in the workplace, his tendency for lawfulness and/or respect for laws in the workplace." CP at 531. The Wises explained at oral argument that they were not challenging the court's determination that the testimony would not have been relevant to whether Cooper taking offense to Wise's behavior was reasonable. Rather, the Wises argued that they should have been entitled to introduce positive character testimony to rebut Cooper's evidence of Wise's disrespectful, oppressive character and his belief that he was above the law.

13

The court rejected this argument and explained that because the Wises never made an offer of proof, it would "have to speculate" about the witnesses' testimony. 2 VRP at 693. The court explained that even assuming the witnesses would testify positively about Wise's character, such testimony was offered "purely as propensity." 2 VRP at 692. The court also noted that the witnesses would not be able to offer any relevant factual testimony because they did not work at the clinic at the same time as Cooper.

Second, the Wises argued that the trial court erroneously excluded the copy of Cooper's timesheet with Rima's handwritten notes. The Wises acknowledged that they were able to elicit testimony from Rima "about whether Plaintiff had been overpaid based on the hours documented in these records" but argued that the document itself was "absolutely necessary" to prove a bona fide dispute regarding whether Cooper was entitled to the wages at issue in the case and thus defeat Cooper's claim of willfulness. CP at 531-32. They did not state when the document was prepared. Cooper responded that the document would not be relevant to willfulness at the time of the withholding because the document was printed and prepared much later. The trial court rejected this argument and ruled that Rima's "review of wages a year and a half later" was irrelevant to the issue of willfulness at the time of the withholding. 2 VRP at 693.

Third and finally, the Wises argued that the jury's verdict for noneconomic damages was unsupported by substantial evidence and was the result of passion or prejudice. The Wises pointed to the jury's question during deliberations as evidence that the jury did not independently assess the value of emotional damages warranted by the evidence, but instead was influenced by the amount that Cooper requested. The Wises also argued that although Cooper failed to present evidence of "severe" distress that required medical treatment, the jury awarded her much higher

noneconomic damages compared to other juries in cases where the plaintiffs had presented that type of evidence. CP at 535. The cases used as comparators were decided between 1993-2011.

The court concluded that substantial evidence supported the verdict and that the Wises had not shown passion or prejudice influenced the jury. The court explained, "Ms. Cooper testified as to the impacts the termination had on her. So, I think there was substantial evidence there. The notion that there has to be something specific, that there have to be doctors or anything like that, isn't supported in the law." 2 VRP at 695. Additionally, the court found it persuasive that the Wises presented neither evidence contradicting Cooper's testimony of her own emotional distress, nor any argument that Cooper's emotional distress was worth a lower monetary amount than what she requested. The trial court orally denied the posttrial motion for a new trial on November 15, 2022.

The trial court then entered a written order denying the motion for a new trial and final judgment awarding Cooper $943,251.67 on March 21, 2023. The trial court's judgment shows that Wise and Rima were jointly and severally liable for a total of $521,139.67, which included attorney fees and costs, as well as $2,500 in discovery sanctions. Wise was solely liable for a total of $422,112. The court's final calculation of attorney fees included the unpaid attorney fees previously awarded for Cooper's efforts to compel discovery. The Wises appealed within 30 days of entry of the final judgment on April 10, 2023.

ANALYSIS

I. TIMELINESS

As an initial matter, Cooper argues that this appeal is untimely because the Wises did not file their appeal until more than 30 days from the trial court's denial of the Wises' motion for a

new trial or remittitur. The Wises respond that the appeal is timely because they timely sought review of the final judgment. We agree with the Wises.

Appellants must file a notice of appeal within the longer of (1) 30 days after the entry of the decision the appellant wants reviewed, or (2) 30 days after the entry of an order granting or denying a motion for a new trial. RAP 5.2(a), (e). RAP 2.2(a)(1) allows a party to appeal a "final judgment entered in any action or proceeding." An oral ruling is generally not appealable because it "has no binding or final effect unless it is formally incorporated into findings of fact, conclusions of law, and judgment." *State v. Dailey*, 93 Wn.2d 454, 458-59, 610 P.2d 357 (1980); *Grein v. La Pomma*, 47 Wn.2d 40, 41, 286 P.2d 97 (1955) ("An appeal does not lie from an oral decision.").

Here, the trial court orally denied the Wises' motion for a new trial on November 15, 2022, but did not enter a written order at that time. The denial of the Wises' motion for a new trial was not reduced to a written order until the trial court also entered its final judgment on March 21, 2023. The Wises filed a notice of appeal seeking review of the final judgment on April 10, 2023. Thus, the appeal is timely as it was filed fewer than 30 days after the entry of final judgment.

To the extent the issues raised in this appeal overlap with the trial court's denial of the Wises' motion for a new trial, that does not make the appeal untimely. The court's oral ruling was not reduced to a written order, and this appeal from the trial court's final judgment brings up for review the trial court's ruling on a motion for a new trial. RAP 2.4(f)(3). This appeal was timely filed.

## II. EVIDENTIARY RULINGS

The Wises challenge numerous evidentiary rulings: granting Cooper's motion in limine to exclude character testimony by Wise's former employees who did not work at the clinic during

the same time as Cooper, sustaining Cooper's objection to his questioning of Rima Wise regarding a document about Cooper's pay that he apparently planned to offer into evidence, and excluding text messages between Cooper and Wise showing an agreement to settle for a lower bonus payment.

We review the trial court's evidentiary rulings for abuse of discretion, deferring to the judgment of the trial court unless no reasonable person would agree with the challenged ruling. *Gerlach v. Cove Apts., LLC*, 196 Wn.2d 111, 119, 471 P.3d 181 (2020). Additionally, an erroneous evidentiary ruling merits reversal only if the error is prejudicial. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). "'[E]rror is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *Id.* (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)).

Ordinarily, we do not consider a challenge to a ruling excluding evidence unless the proponent preserved the error by making an offer of proof pursuant to ER 103(a)(2). *Adcox v. Child.'s Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 26, 864 P.2d 921 (1993). An offer of proof "'informs the court of the legal theory'" of admissibility, "'informs the judge of the specific nature of the offered evidence,'" and "'creates a record adequate for review.'" *Id.* (quoting *State v. Ray*, 116 Wn.2d 531, 538, 806 P.2d 1220 (1991)). An offer of proof need not be detailed, but the proponent must at least communicate "the substance of the evidence in question." *Id.* at 27. If the proponent fails to make an offer of proof, we may review the ruling only if the substance is apparent from the record. *Id.* at 26; ER 103(a)(2).

A.      Former Employee Witnesses

The Wises argue that the trial court erroneously excluded the testimony of "four former female employees who were to testify as to their positive experience" working at the clinic and about the "lack of animus or hostility towards any employees on the basis of gender." Appellants' Opening Br. at 14. Cooper argues that the Wises failed to make an offer of proof about the witnesses' anticipated testimony and that the evidence was properly excluded. We agree with Cooper.

The Wises acknowledge that they did not make an offer of proof, but argue that an offer of proof was not required because an objection and an offer of proof are two alternative means of preserving trial court error. This is incorrect because where, as here, the trial court's ruling is one *excluding* evidence, an offer of proof is required unless the substance of the excluded evidence is otherwise apparent from the record. ER 103(a)(2).

The Wises also argue that counsel's comments sufficed to create a reviewable record. They cite to counsel's argument that the witnesses could testify about "things [that] may have been said during their employment that are similar to some of the statements that [Cooper] [] alleged, and whether or not that caused them to feel the same feelings." 1 VRP at 127. Although an offer of proof need not be detailed, this vague statement did not alert the trial judge to the substance of the anticipated testimony. Indeed, the trial court explained when addressing posttrial motions that it did not have sufficient information and would thus "have to speculate" about their anticipated testimony. 2 VRP at 693. We agree with the trial court that the substance of the anticipated testimony was not sufficiently clear from the context and that the Wises did not make a sufficient showing of what the witnesses would say to preserve this error for review.

Thus, we conclude that the alleged error is unpreserved and that due to the failure to preserve the error, we do not have a sufficient record to consider the merits. RAP 9.10.[4]

B.        Evidence of Erroneous Overpayment

The Wises argue that the trial court erroneously excluded evidence of overpayment that would have been relevant to the issue of whether Cooper was entitled to double damages due to willful withholding of wages. This appears to be a challenge to the trial court's ruling sustaining Cooper's objection to the Wises' apparent attempt to lay the foundation for admission of a document during the Wises' direct examination of Rima. Cooper argues that the Wises failed to preserve the issue and that even if they had, any error would be harmless. We agree with Cooper.

The document at issue was never offered into evidence and is not in the record for this appeal. The parties agree that the document was a printout of Cooper's timesheet with Rima Wise's handwritten calculations on the document. The parties do not dispute that Rima prepared the document approximately one and a half years after Cooper's termination. The Wises elicited testimony that Rima believed Cooper worked fewer overtime hours than her timesheets reflected.

Cooper objected to the line of questioning on relevance grounds because the Wises made no offset claim. Counsel addressed the court in a sidebar that was not reported. The trial court agreed with Cooper and sustained the objection. The Wises did not make any further argument or offer of proof, did not make any further record, did not make another attempt to lay a foundation, and never offered the document into evidence.

---

[4] We note that were we to rely on the information provided—that the unnamed witnesses would have testified about their own reactions to similar behavior from Wise—the Wises have not shown the trial court abused its discretion when it concluded these other witnesses' assessments were not relevant to the application of the reasonable person standard where the witnesses were not employed in the dental office at the same time Cooper was.

We first note that although the parties argue about the trial court's "exclu[sion]" of the document, because the Wises never moved to admit the document, the trial court did not actually make a ruling excluding the document itself. The trial court instead sustained the objection to the related line of questioning about Cooper's overtime.

The Wises argued in their motion for a new trial, and they argue here, that the document was relevant to establish a bona fide dispute to disprove that any wages were willfully withheld. But the Wises fail to show where they alerted the trial court to the theory of relevance that they now raise. *See* RAP 2.5(a); *Allen v. Asbestos Corp., Ltd.*, 138 Wn. App. 564, 578, 157 P.3d 406 (2007) (declining to consider appellant's challenge to exclusion of evidence because the theory of admissibility raised on appeal was not argued at the trial court level). The party seeking to admit evidence has a duty to inform the trial judge of their theory of admissibility "so the court may make an informed ruling." *Adcox*, 123 Wn.2d at 27. And here, the Wises' counsel made no record of what occurred in the sidebar before the trial court sustained the objection to the line of questioning about Cooper's overtime. Although the willfulness argument was in the Wises' motion for a new trial, raising the argument for the first time in their motion for a new trial was too late to preserve the matter for our review. *See id.* at 28-29 (proponent of excluded evidence did not preserve error by raising it in their posttrial motion, after the proponent "deliberately chose . . . not to make an offer of proof at the critical time when the trial judge was deciding whether to exclude the relevant evidence; [and chose] not to take any clear position about [the legal theory supporting the relevance of the excluded evidence] during the pretrial rulings."); *Sherman v. Mobbs*, 55 Wn.2d 202, 207, 347 P.2d 189 (1959) ("[C]ounsel cannot, in the trial of a case, remain silent as to claimed errors, and later, if the verdict is adverse, urge [their] trial objections for the first time in [their]

motion for a new trial."). Thus, the Wises cannot show that they timely alerted the trial court to the error they now complain of in this appeal. RAP 2.5(a).

Finally, to the extent the Wises challenge their inability to elicit testimony regarding an erroneous overpayment of overtime, they cannot show they were actually deprived of the opportunity to present this testimony. Rima stated, without objection, that "after reviewing the hours, we know that she got overpaid." 1 VRP at 450. Cooper herself had already testified that she was overpaid at least once because Rima often made errors when calculating employees' timesheets. Thus, the Wises cannot show that they were not permitted to elicit this testimony, and because the general overpayment testimony was in the record, the Wises were not precluded from making their willfulness argument at trial.

We conclude that the alleged error is unpreserved and even if it were properly preserved, the Wises cannot show prejudice.

C.     Text Messages

The Wises argue that the trial court abused its discretion when it improperly excluded evidence of text messages between Cooper and Wise that would have shown Cooper agreed to settle the back due bonus payments for $800, rather than the $1,400 she was claiming at trial. Cooper argues that the Wises have failed to sufficiently identify the alleged error of the trial court. In their reply, the Wises argue that the text messages are sufficiently identified because they were admitted into evidence. We agree with Cooper.

The Wises assert that at trial, they "attempted to introduce text messages between Plaintiff and Defendant Dr. Sam Wise which showed Plaintiff acknowledged that the agreement to pay periodic bonuses was terminated and agreed that the amount of unpaid bonuses owed was $800."

Appellants' Opening Br. at 20. For this assertion, they cite only to their motion for a new trial and to their closing argument, which are not evidence. Based on the argument in their reply to this court, the Wises appear to be referring to exhibit 109, a text message exchange between Cooper and Wise that the court admitted into evidence during the Wises' cross- examination of Cooper.

The Wises did not designate this exhibit or any others for transmittal to this court for review, but the record shows that the text exchange was admitted with no objection and that the Wises questioned Cooper about the contents without objection. The questioning indicates that the text messages contained Cooper's request for payment from Wise based on her own calculations of her work hours and wages owed. The Wises have not alerted us to another evidentiary ruling regarding the messages and, indeed, they agree the messages that are the basis of their challenge were admitted into evidence, so it is unclear what error they seek to have us review.

We rely on the parties to alert us to the errors they complain of, but here, the Wises have not identified any trial court ruling for us to review. And although we are not obligated to search the record, our careful review of the record has revealed no other attempt by the Wises to admit a text message exchange between Wise and Cooper regarding the unpaid bonuses. *See Multicare v. Dep't of Soc. & Health Servs.*, 173 Wn. App. 289, 299, 294 P.3d 768 (2013) ("We cannot and will not comb through the record on the possibility that some mistake may lie somewhere within.").

Because the Wises have failed to allege any error and have acknowledged that the text messages they sought to introduce were actually admitted into evidence, they cannot show any abuse of discretion by the trial court.

III. NONECONOMIC DAMAGES

The Wises argue that the trial court erred when it denied their motion for a new trial or remittitur because the jury awarded noneconomic damages to Cooper that were unsupported by substantial evidence and were the result of passion or prejudice. We disagree.

Parties may move for a new trial under CR 59 and, in the alternative, request a reduction in the amount of damages awarded. RCW 4.76.030. We review the denial of a CR 59 motion challenging a jury's damages award "for a manifest abuse of discretion, while still deferring to the jury's constitutional role as ultimate fact finder." *Coogan v. Borg-Warner Morse Tec Inc.*, 197 Wn.2d 790, 815, 490 P.3d 200 (2021). We strongly presume the jury verdict is correct. *Id.* We do not reweigh the evidence and we draw all reasonable inferences in the light most favorable to the verdict. *Id.* at 810-12. We first ask whether the verdict was based on substantial evidence, and if so, whether the verdict was a result of passion or prejudice. *Id.* at 813.

A.      Substantial Evidence

A trial court may set aside a jury's verdict when "there is no evidence or reasonable inference from the evidence to justify the verdict." CR 59(a)(7). The moving party must show that the verdict "'is outside the range of substantial evidence in the record.'" *Coogan*, 197 Wn.2d at 811 (internal quotation marks omitted) (quoting *Bunch v. King County Dep't of Youth Servs.*, 155 Wn.2d 165, 179, 116 P.3d 381 (2005)). Substantial evidence supports a verdict involving noneconomic damages if the evidence, taken in the light most favorable to the jury's verdict, "'would convince an unprejudiced, thinking mind'" that the plaintiff suffered some emotional distress. *Id.* (internal quotation marks omitted) (quoting *Bunch*, 155 Wn.2d at 179). "The distress

need not be severe." *Bunch*, 155 Wn.2d at 180. A plaintiff's testimony alone can constitute substantial evidence and corroboration is not required. *Id.* at 181.

Here, the jury found that Cooper was entitled to noneconomic damages in the amount of $350,000 for her hostile work environment claim and $350,000 for her wrongful termination claim. The Wises argue, as they argued in their CR 59 motion, that the emotional distress awards were unsupported by substantial evidence because in their view, Cooper needed to present extrinsic evidence of emotional distress or at least testify to severe distress. They complain that unlike other plaintiffs who presented medical or other extrinsic evidence, Cooper "merely named her emotions and left the jury to speculate." Appellants' Opening Br. at 24.

However, Cooper testified extensively and presented corroborating evidence supporting the emotional distress verdict for both the jury awards. With regard to hostile work environment, Cooper testified about her discomfort and shock at the Wises' offensive words and actions in the workplace. And even absent that direct evidence, the jury could infer emotional distress based on Cooper's and other witnesses' descriptions of Wise's conduct in the workplace, as well as conduct he admitted to. We agree with the trial court that substantial evidence supported the noneconomic damages award for hostile work environment.

With regard to wrongful termination, Cooper testified that she was fired in a confrontational manner during the early months of COVID-19, had to move in with her daughter, had trouble finding a new job, and was embarrassed because she had never been fired before. She remained unemployed for nearly a year during a notoriously difficult time for job seekers, between March 2020 to June 2021. This is sufficient for the jury to infer emotional distress and the case law provides that emotional distress "need not be severe." *Bunch*, 155 Wn.2d at 180. Therefore,

the trial court did not abuse its discretion when it concluded that substantial evidence supported the jury's noneconomic damages awards.

B.     Passion or Prejudice

The Wises argue in the alternative that the award resulted from passion or prejudice. Because substantial evidence supports the award, the jury had discretion to decide the amount of the award based on the evidence presented. *Id.* at 181. We may reverse the trial court only if the trial court erred by concluding the verdict was not "the result of passion or prejudice." CR 59(a)(5). We ask whether "the only reasonable view is that something other than the evidence at trial unmistakably caused the jury's verdict." *Coogan*, 197 Wn.2d at 815-16.

In their CR 59 motion, the Wises argued that the jury could not have based its verdict on the evidence because the jury asked how much in noneconomic damages Cooper was seeking and awarded Cooper that amount. But to show passion or prejudice, the record must show that the verdict was "influenced by 'untoward incidents of such extreme and inflammatory nature that the court's admonitions and instructions could not cure or neutralize them.'" *Id.* at 814 (quoting *James v. Robeck*, 79 Wn.2d 864, 871, 490 P.2d 878 (1971)). Here, the jury's question shows merely that the jury sought clarification of Cooper's request for damages and does not indicate anything untoward, extreme, or inflammatory occurred in the jury room.

The Wises make no argument that the court's answer was improper—and to the extent they impliedly challenge the answer itself, they declined to make a record of the sidebar discussion when the court asked whether they wanted to do so. We presume jurors follow their instructions and defer to the jury as the ultimate factfinder, especially as to the amount of damages. *Id.* at 815.

25

Thus, we decline the Wises' invitation to infer juror misconduct from a question that the Wises did not view as problematic until after the verdict returned.

Because the Wises cannot show any evidence of passion or prejudice, the trial court did not abuse its discretion in denying their motion for a new trial or remittitur.

## IV. DISCOVERY SANCTIONS

The Wises argue that the trial court abused its discretion in awarding sanctions for their pretrial discovery violation because the court failed to consider their financial circumstances and ability to pay. Cooper responds that the court never entered the challenged sanctions award and that we should decline to review the actual sanctions award that was entered in the amount of $2,500. We agree with Cooper that the sanctions challenge is vague and does not identify the supposed error. Nevertheless, to the extent the Wises have raised a reviewable claim of error with respect to the $2,500 sanctions award, we conclude that the trial court did not abuse its discretion in concluding the underlying discovery violation was willful.

The sanctions section of the Wises' opening brief seems to conflate the court's treatment of two distinct sanctions requests: (1) Cooper's pretrial motion for sanctions based on the Wises' failure to meet their discovery obligations and (2) Cooper's subsequent sanctions request made during trial after the Wises' attempt to introduce previously undisclosed text messages. The first request in the amount of $10,000 was denied. The second request was granted, but the court reserved determination of the amount and later awarded $2,500 for this and similar violations.

We presume the Wises mean to challenge the sanctions that were actually entered against them in the amount of $2,500.

The Wises argue that the court erroneously concluded that their discovery violations were willful by failing to consider the Wises' financial circumstances. However, the Wises' financial circumstances were irrelevant to whether they willfully withheld responsive documents and then attempted to use those documents at trial. It is possible that their finances may have been relevant to the *earlier* ruling regarding their failure to pay attorney fees, but the court considered their finances at that time and ultimately denied that motion for nonmonetary sanctions. And the willfulness ruling they quote in their brief concerned their obligation under court rules and a court order to produce text messages that they were aware of as early as Wise's deposition. The Wises' finances were irrelevant to the conduct for which the $2,500 sanctions were imposed. Therefore, we find no error in the fact that the court did not consider the Wises' ability to pay before it made that ruling.

The Wises pivot in their reply brief and argue instead that the trial court's pretrial award of attorney fees and costs in the amount of $10,122.35 awarded for Cooper's efforts to compel discovery, was actually a sanction that the Wises have challenged on appeal. But the trial court characterized this award as an award of attorney fees. The court calculated the fees according to the lodestar method, applying the relevant lodestar considerations and included it in the final attorney fee calculation posttrial. Even if we were to agree that this award was a sanction, the Wises have not shown that their ability to pay is a required consideration when compensating a party for steps taken to compel discovery. The trial court did not err in its order imposing attorney fees and costs for efforts Cooper made to compel discovery.

No. 58216-3-II

ATTORNEY FEES

Cooper requests attorney fees on appeal. We award reasonable attorney fees under RAP 18.1 to a prevailing party who is entitled to fees under applicable law. Here, as the prevailing party in a gender discrimination lawsuit, Cooper is entitled to reasonable attorney fees in this appeal. RCW 49.60.030(2). Cooper is also entitled to fees under RCW 49.48.030 because she prevailed in her wage claims.

CONCLUSION

We conclude that the Wises have not shown any error and we affirm the trial court. We grant Cooper's request for reasonable appellate attorney fees in an amount to be determined by a commissioner of this court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

VELJACIC, J.